Isidore **SHULMAN**, Plaintiff,

v.

**WASHINGTON HOSPITAL CENTER et al., Defendants.**

**Civ. A. No. 1383–68.**

United States District Court, District of Columbia.

Oct. 9, 1970.

PRATT, District Judge.

This matter was tried before the Court without a jury on September 3, 1970. Plaintiff, a licensed physician in active practice in Washington, D. C., and the metropolitan area, seeks a declaratory judgment that his dismissal from the courtesy staff at the Washington Hospital Center without a formal hearing violated his constitutional due process rights, constituted a breach of contract, maliciously interfered with his professional and business relations, and violated his statutory civil rights.

Defendant Washington Hospital Center is a non-stock, non-profit corporation, originally organized by private individuals in 1949. Although the current physical plant was constructed by the United States Government, it was transferred to defendant for full value in 1952 under a five-party contract, pursuant to an Act of Congress which specifically empowered the Administrator of GSA to make the sale to "private agencies," Act of Congress, September 4, 1947, 71 Stat. 610. The hospital receives no public funds other than partial reimbursement for the treatment of indigents, and its corporate affairs are managed by a Board of Trustees,

none of whom are employees of any government.

Plaintiff's status as a member of the courtesy staff was terminated on the recommendation of the Medical Advisory Committee on December 12, 1962 that his privileges not be renewed for various reasons, including his alleged failure to cooperate with the medical staff in carrying out the hospital's teaching function. After approval of the Medical Advisory Committee's recommendation by the full Medical Board on January 7, 1963, plaintiff first heard that his privileges had not been renewed on January 10, 1963. Plaintiff had not been formally notified of any complaints against him, nor had he been offered an opportunity for refutation. His later request for a statement of charges and a chance to confront complainants was refused. On June 12, 1963, Dr. Shulman filed his first suit in this court, claiming, among others, a violation of his right to due process. Judge Holtzoff granted defendants' motion for summary judgment on the ground that the Center was a private hospital, and thus had the right in its discretion to exclude any physician from practicing therein, free from judicial scrutiny, assuming the action taken conformed procedurally to the corporation's constitution, by-laws, rules and regulations. See Shulman v. Washington Hospital Center et al., D.C., 222 F.Supp. 59 (1963).

Dr. Shulman, in the same action, was granted leave to file an amended complaint. On August 5, 1964, Judge Jones, in an unreported decision, again granted defendants' motion for summary judgment, holding that the earlier decision was *res judicata* as to the due process claim. On appeal, the case was remanded for dismissal without prejudice, pending exhaustion of administrative remedies within the hospital. See 121 U.S.App.D.C. 64, 348 F.2d 70 (1965). Following that mandate, defendants have taken all steps required under the hospital by-laws and regulations for both revocation and nonrenewal, although plaintiff was at no time given the names of the complainants or a full, evidentiary hearing assisted by counsel. Plaintiff argues that annual reappointments to the staff are automatic and, therefore, the hospital should have followed the revocation procedures. The Court of Appeals did not reach that question, but observed that:

"The by-laws yield no clear answer. But if, for example, annual reappointment occurs as a matter of course, refusal to reappoint might be a 'revocation' within the meaning of § 4B." 348 F.2d at 72 (D.C. Cir. 1965)

■ Based on a complete examination of the applicable hospital procedures, the pleadings in this case, and after trial at which evidence was introduced, the Court finds that the action of the defendants in failing to renew plaintiff's appointment was taken in accordance with the Hospital Center's procedural requirements set forth in its constitution, by-laws, rules and regulations. The Court further finds that, contrary to plaintiff's argument, the revocation procedure is inapplicable here, that reappointment is not automatic, but requires recommendation each year by the Medical Staff, and that Dr. Shulman's 1962 appointment had expired at the end of the calendar year. There was, therefore, no outstanding and existing appointment requiring revocation. Even if revocation were the proper procedure, however, the hospital complied with those rules also.

■■ Although the Court is of the opinion that the earlier decisions of Judge Holtzoff and Judge Jones are *res judicata* as to plaintiff's due process claim, the record contains ample independent grounds for concluding that the Washington Hospital Center is a "private" as distinct from a "public" institution, for the purposes of determining what sort of judicial review is applicable to its actions in managing its staff. It is clear that this hospital does not have the close governmental ties, either financial or managerial, which would justify its being classified as public. All

of the cases cited by plaintiff to support its argument that defendants should be subject to constitutional standards of due process which require notice, hearing, stated reasons for dismissal, and the right of confrontation, involve hospitals which received substantial government aid for operation or construction, see Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964); Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D.Pa.1970), and/or which were the only hospitals in the area, and thus acquired a quasi-public character, see Meredith v. Allen County War Memorial Hospital Commission, 397 F.2d 33 (6th Cir. 1968); Burkhart v. Community Medical Center, 432 S.W.2d 433 (Ky.Ct. App.1968); Foster v. Mobile County Hospital Board, 398 F.2d 227 (5th Cir. 1968). The Court holds that defendant Washington Hospital Center, as a private institution, has the right to remove members of its staff, free from judicial review, so long as its own regulations are followed as was done in this case.

■ As for Dr. Shulman's other claims, the Court finds that no contract existed between the hospital and plaintiff which would entitle him to relief. Members of the courtesy staff are allowed to treat their private patients at the hospital when space is available, and they have access to other facilities of the Center which are incident to modern medical care, but there is not a formal or informal agreement which is binding between any physician on the courtesy staff and the hospital. Staff members are not compensated by the hospital, and they may resign at will, or may maintain membership without ever treating any patients there whatsoever.

■ Likewise, the Court finds that none of the individual defendants, all of whom acted in some administrative capacity, maliciously interfered with plaintiff's professional relationships. They were acting in the scope of their positions in failing to renew plaintiff's appointment. While not necessary to the decision in this case, their actions appear from the record to have had substantial justification. Not only was no malice on the part of any individual ever shown, Dr. Shulman did not prove any damage, either monetary or to his professional reputation. He continues to retain staff privileges at several hospitals in the area, and it is unquestioned that he finds adequate facilities to treat his patients. The Court takes judicial notice of the fact that none of the more than twenty hospital complexes in the area is able to grant privileges to all the physicians who desire them.

■ Last, for the same reasons discussed above in relation to the due process claim, none of the actions of the hospital or the individual defendants were taken "under color of law" in such a way as to violate plaintiff's civil rights under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. Compare Meredith v. Allen County War Memorial Hospital Commission, supra; Sams v. Ohio Valley General Hospital Association, 413 F.2d 826 (4th Cir. 1969); and Citta v. Delaware Valley Hospital, supra.

Findings of fact, conclusions of law, and an order consistent with the above have been entered.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came on for trial on September 3, 1970, and upon consideration of the pleadings, the evidence and testimony adduced at the hearing and the Trial Memoranda of Law of the parties in support of their respective positions, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. This is an action for declaratory and injunctive relief as well as for compensatory and punitive damages.

2. Plaintiff, Isidore Shulman, is a resident of the State of Maryland, and a duly licensed physician in active practice

in Washington, D. C., and the metropolitan area, specializing in internal medicine and cardiology.

3. Defendant, Washington Hospital Center, is a non-stock, non-profit corporation, organized by private individuals on August 15, 1949, under the authority of Title 29, Section 601 of the District of Columbia Code.

4. Defendant, Thomas W. Mattingly, is a resident of the State of Maryland and was Chairman of the Department of Medicine and Director of Medical Education as well as a Senior Attending Physician on the Medical Staff of the Washington Hospital Center at the time this action arose.

5. Defendant, R. M. Loughery, is a resident of the State of Virginia, is and has been at all times relevant hereto, the Administrator of Washington Hospital Center.

6. Defendant, Theo J. Abernethy, is a resident of the District of Columbia, and was Chief of the Medical Staff of Washington Hospital Center when this action arose.

7. The defendant, Washington Hospital Center, owns, maintains and operates a hospital plant in Washington, D. C., constructed by the United States Government, on the grounds of the former Soldiers' Home, and thereafter sold by the Government to the Washington Hospital Center corporation, for full value, under a five-party contract, dated July 3, 1952 (as amended July 27, 1959) in consideration of the conveyance to the United States Government of other properties owned by the three hospitals —Emergency Hospital, Episcopal Hospital and Garfield Hospital—whose operations had coalesced in the Washington Hospital Center, and pursuant to Acts of Congress of August 7, 1946 (60 Stats. 896) and September 4, 1947 (71 Stats. 610), which specifically empowered the Administrator of the General Services Administration of the United States to make the said sale to "private agencies."

8. The corporate affairs and funds of the Washington Hospital Center are controlled and managed by a Board of Trustees, who are elected for terms of three years by the members of the corporation and none of whom are *ex officio* officers or employees of any government.

9. The Washington Hospital Center is a "teaching hospital," by virtue of express declarations in its By-Laws and elsewhere. Article II ("Purposes") of the By-Laws of the Medical Staff of the Hospital Center, reflects this fact and prescribes as a primary goal of the Staff "[t]o maintain high professional and educational standards." Subsection 5(E) of Article III of the Medical Staff By-Laws further provides in terms that:

"The granting of privileges shall require that all physicians cooperate with the teaching program of the Hospital to the fullest extent compatible with good patient care."

10. The By-Laws of the Washington Hospital Center corporation vest its Board of Trustees with management authority for the Hospital Center; provide for the election by the Board of Trustees of an Executive Committee which "may exercise all the powers of the Board of Trustees during the intervals between meetings of the Board * * *"; and provide for the selection and employment by the Board, of a Hospital Administrator, responsible for administration of the Hospital, subject to policies and orders of the Board of Trustees or "any of its Committees to which it has delegated power for such action."

11. The By-Laws of the corporation further require the Board of Trustees to make appointments to the hospital's Medical Staff "for one year only, renewable * * * on the recommendation of the [Medical] Staff." Article 39 of the By-Laws provides that:

"The Board of Trustees at all times shall have the right to refuse to admit * * * any doctor of medicine * * * to practice his profession in the Washington Hospital Center and to prohibit any such person who has at any time practiced his * * * profes-

sion therein, from practicing thereafter his * * * profession in such hospital."

12. Article 35 of the By-Laws charges the Board of Trustees with the responsibility for approving By-Laws, Rules and Regulations for the Medical Staff upon the recommendation of the staff. Article IV of the By-Laws of the Medical Staff creates a Medical Board of specified senior medical staff members to approve all appointments to the Medical Staff; Article III, Section 4 empowers the Medical Board to suspend Staff privileges in its sole discretion. Members of the Medical Staff are classified as emeritus, consulting, active and courtesy. Plaintiff had, for some years prior to the commencement of operations of the Washington Hospital Center, been a member of the Courtesy Staff of the Emergency Hospital and a member of the Active Staff of the Garfield Hospital. When the Center commenced operations, plaintiff, together with all other physicians, was required to make new application for staff privileges in the Washington Hospital Center. Plaintiff did so and was appointed to the Courtesy Staff in February, 1958, and his appointment was thereafter renewed for successive one calendar year terms, through 1962.

13. Dr. Shulman has been admitted to staff privileges at a number of other private general hospitals in the Washington Metropolitan area, including Doctors Hospital, Georgetown University Hospital, Sibley Memorial Hospital, George Washington University Hospital, Suburban Hospital, Maryland (Malin) Hospital, and Alexandria Hospital, institutions possessing an aggregate patient bed capacity of approximately 2,500 beds. Dr. Shulman asserted that prior to the non-renewal of his privileges in the Washington Hospital Center, he admitted perhaps 90% of his patients to that institution but was unable to show that he is currently unable to find accommodations for his private patients at one of the other institutions above-listed. He testified that he admitted so many of his patients to Washington Hospital Center because "many of them" lived in close proximity to that institution but by no means 90%. Dr. Shulman also showed no decline in the extent of his "busy" practice as a result of the non-renewal of his staff privileges in the Washington Hospital Center.

14. Within the Medical Staff of the Washington Hospital Center, a Medical Advisory Committee is charged with the function of making recommendations to the Chairman of the Department of Medicine as to new appointments and renewal or non-renewal of prior appointments to the Medical Staff; the Department Chairman has responsibility to report such recommendations of the Medical Advisory Committee to the Medical Board; and the Medical Board, in turn, makes recommendations to the Board of Trustees of the corporation.

15. On December 12, 1962, the Medical Advisory Committee recommended against renewal of Courtesy Staff privileges for three physicians, among them the plaintiff, Dr. Shulman, and his recommendation was accepted by the full Medical Board at its first meeting in 1963, held on January 7. The Medical Board thereupon informed the Office of the Administrator that Dr. Shulman's privileges had not been renewed for the current year.

16. Plaintiff first learned of the non-renewal of his privileges when, on January 10, 1963, he telephoned the Hospital to reserve a bed for a patient and was so advised by the Office of the Administrator. He immediately contacted the defendant, Dr. Abernethy, who promised to "see what [he] could do" about arranging a meeting between plaintiff and the members of the Medical Advisory Committee.

17. On January 16, 1963, plaintiff met informally and discussed with Dr. Mattingly and Dr. Henry Ecker, Chairman *ex officio* and Member, respectively, of the Medical Advisory Committee (none of the other members could be present on such short notice), the reasons for the Committee's action in rec-

ommending that his Courtesy Staff privileges not be renewed. At that time, plaintiff was apprised in general terms of the Committee's reasons, which included numerous reports, complaints, "common knowledge" and other information to the effect that Dr. Shulman on numerous instances over a period from his admission to staff privileges in 1958 until that time (1) had failed to "cooperate with the Hospital's teaching program" in consistently refusing to allow House staff (interns and residents) to be partners in diagnosis and treatment of his private patients; (2) that he was hostile to, unduly and at times, unfairly, critical of, and, in general, disliked by, members of the House and nursing staff; (3) that he abused the Emergency Room and Intensive Care Unit to admit noncritical private patients when there was no room on the ward, thus reducing the availability and effectiveness of those units in the treatment of genuinely critical patients; (4) that he hindered House staff in attending to his patients by unorthodox and improper handling of diagnostic work-ups, particularly regarding failure to provide proper serial ECG records on patients' charts for use of the House staff in emergency situations during his absence; *inter alia.*

18. Dr. Shulman requested of Drs. Mattingly and Ecker the names of all personnel who had made complaints or provided information on the basis of which the Medical Advisory Committee acted, together with precise, detailed charges and the opportunity to confront any such complainants or informants. Both requests were refused. Subsequent to this initial meeting between plaintiff and Drs. Mattingly and Ecker, however, plaintiff was apprised in more or less general terms of these reasons underlying the Hospital's non-renewal of his privileges on numerous occasions.

19. On January 22, 1963, the first meeting of the Executive Committee of the Board of Trustees, acting on departmental recommendations for staff privileges, accepted and adopted the recommendation of the Medical Board that Dr. Shulman's privileges not be renewed for the year 1963. Dr. Shulman was thereafter officially and formally advised of same in a letter from the Office of the Administrator under date of February 24, 1963.

20. At the first meeting of the full Board of Trustees, on February 25, 1963, the Board, in plenary session, ratified the action of its Executive Committee in adopting the recommendation of the Medical Board.

21. On March 28, 1963, Dr. Mattingly, in response to the request of plaintiff, suggested a meeting and discussion between plaintiff and the full membership of the Medical Advisory Committee as to the reasons for the Committee's action in recommending non-renewal of Dr. Shulman's staff privileges. Dr. Mattingly suggested such meeting be held on April 8, 1963, which date Dr. Shulman declined as inconvenient. A second suggestion that such a meeting be held on May 13, 1963, was also declined by Dr. Shulman on the grounds that he had been "prejudged" by the Medical Advisory Committee.

22. On June 12, 1963, plaintiff filed suit in this Court, Civil Action No. 1494–63, seeking declaratory relief establishing his alleged right to reinstatement, claiming violation by these defendants plus one other, not a party hereto, of his constitutional rights to due process and seeking damages for defamation. On October 17, 1963, this Court, per Judge Holtzoff, granted a motion by defendants for summary judgment, ruling that the Washington Hospital Center was a private hospital, inherently possessed of the right, in its sole discretion, to exclude any physician from practicing therein; that its actions in so doing were not subject to judicial review absent a failure to conform to procedural requirements set forth in its own constitution, By-Laws or rules and regulations and that no such procedural violation had been shown. Shulman v. Washington Hospital Center et al., D.C., 222 F.Supp. 59.

23. Dr. Shulman was, however, granted leave to file an amended complaint and, on November 4, 1963, did so, abandoning at that time, his earlier claim for defamation and substituting therefor two counts alleging anti-trust and common law conspiracy. This Court again granted summary judgment upon motion of defendants, per Judge Jones, in an unreported Memorandum Opinion under date of August 5, 1964, ruling that the prior Opinion of Judge Holtzoff was *res judicata* on Count One of plaintiff's Amended Complaint (again seeking declaratory relief as to his alleged right to reinstatement on due process grounds) and entering judgment for the defendants on both the anti-trust and common law conspiracy counts.

24. On August 5, 1964, Dr. Shulman appealed to the United States Court of Appeals for the District of Columbia Circuit (Appeal No. 18938) which Court, on June 3, 1965, remanded to this Court with instructions to dismiss without prejudice to further proceedings pending exhaustion by plaintiff of his administrative remedies within the Hospital Center, noting, however, in a footnote reference that:

"If, *after* appellant's appearance, the Medical Advisory Board [sic] adheres to its prior recommendation, the *subsequent* administrative procedures applicable under the Hospital bylaws are not clear." (Emphasis added) Shulman v. Washington Hospital Center, 121 U.S.App.D.C. 64, 348 F.2d 70, 71 (1965).

25. Dr. Shulman had argued in the earlier proceedings that since the Hospital By-Laws provide that appointments to the Medical Staff are "made annually on a fixed date, for the year January 1 through December 31," annual reappointment occurred "as a matter of course," absent notice to the contrary prior to January 1 of any given year, and that staff privileges could only be withdrawn thereafter by way of *"revocation"*, an entirely different procedure, for which the By-Laws require reference of the question to the Joint Conference Committee, consisting of the Hospital Administrator, three members of the Board of Trustees and three representatives from the Medical Staff, as a prerequisite to action by the Board. The Hospital has maintained and the Court finds that the revocation procedure is inapplicable here, that reappointment is not automatic, requiring recommendation each year by the Medical Staff, that Dr. Shulman's 1962 appointment had expired and there was no appointment requiring revocation, merely an expired appointment requiring renewal or non-renewal. The Court of Appeals did not reach the question but observed that:

"The by-laws yield no clear answer. But if, for example, annual reappointment occurs as a matter of course, refusal to reappoint *might* be a 'revocation'' within the meaning of § 4B." Shulman v. Washington Hospital Center, 348 F.2d at 72.

26. The unequivocal testimony at trial of the witnesses Drs. Mattingly and Abernethy and of C. Webb Hayes (currently Secretary of the Board of Trustees of the Washington Hospital Center and heretofore Chairman of the Joint Conference Committee which reported to the Board of Trustees on February 17, 1967, regarding Dr. Shulman's case) was that renewal of staff privileges is not now and never has been "automatic" but requires recommendation of the Medical Staff each year.

27. In addition, Drs. Mattingly and Abernethy testified to the procedures followed by the Medical Advisory Committee in its deliberations with respect to applications for appointment to the Medical Staff and renewal of prior appointments. The names of all physicians admitted to staff privileges in the Washington Hospital Center were provided to the members of the Medical Advisory Committee together with the agenda of the meeting, a month in advance of their meeting. Renewal of staff appointments required, in each case, recommendation of the Medical Advisory Committee, although, at least during Dr. Mattingly's term as Chairman of the Committee, the

procedure was, in the witnesses' terms, a "negative one," whereby rather than consider each of some five hundred odd names "from Adams to Zebra", the Committee discussed only those physicians as to whom some one or more of its members thought non-renewal of privileges to be in order.

28. When, pursuant to the suggestion of the Court of Appeals, Dr. Shulman undertook to pursue further his administrative remedies, he again demanded specific and detailed charges of misconduct, a full-dress hearing and the opportunity to confront and cross-examine adverse witnesses, among other things. The Hospital Center acceded to some demands but specifically refused the foregoing.

29. On July 26, 1965, Dr. Shulman met with the defendant Dr. Mattingly and the members of the Medical Advisory Committee. Dr. Mattingly made a statement on behalf of the Committee and a general discussion with plaintiff followed. The Committee called no witnesses, and after Dr. Shulman had made his presentation, the Committee again unanimously recommended against renewal of his courtesy staff privileges, which recommendation was again unanimously adopted by the full Medical Board. On August 18, 1965, Dr. Shulman presented a written "rebuttal" to the Medical Advisory Committee. On September 19, the Medical Advisory Committee considered Dr. Shulman's written rebuttal and again unanimously decided to adhere to its prior determination. On September 21, 1965, Dr. Mattingly again recommended to the Board of Trustees that Dr. Shulman's courtesy staff privileges not be renewed.

30. Owing to the cautionary observation of the Court of Appeals, however, referred to hereinabove in paragraphs 24 and 25, the Executive Committee of the Board of Trustees, on December 7, 1965, referred the matter to the Joint Conference Committee for the investigation and report required by the bylaws for the "revocation" of an outstanding appointment as distinct from non-renewal of a expired one.

31. There followed correspondence between the parties relating to Dr. Shulman's requests for "certain procedural safeguards." On December 30, 1965, Dr. Shulman requested such safeguards, including most notably a specific and detailed statement of charges, a formal "due process" hearing with the right to be represented by counsel, and to confront and cross-examine adverse witnesses; on January 14, 1966, the Chairman of the Joint Conference Committee responded to Dr. Shulman's letter of December 30, 1965, granting certain of his requests and denying others; on May 16, 1966, counsel for Dr. Shulman reiterated his request for certain procedural safeguards and on June 30, 1966, counsel for Washington Hospital Center agreed to provide Dr. Shulman with the names of adverse witnesses only "outside the context of a lawsuit" and only upon a written assurance by Dr. Shulman not to undertake reprisals against any of those persons, reserving, however, his rights against the present defendants. This proposal by counsel for the Hospital Center was again rejected by Dr. Shulman.

32. On September 29, 1966, the Joint Conference Committee met with Dr. Shulman, who was accompanied and assisted by counsel and who called one witness to testify in his behalf as to his general reputation for competence. After these presentations, the Committee deliberated and thereafter submitted its report to the Board of Trustees under date of February 17, 1967.

33. On February 24, 1967, plaintiff was provided with what he has termed "an expurgated version" of the report of the Joint Conference Committee, sans exhibits. He was again offered the full text thereof, including the names of those persons upon whose complaints and information the actions of the Medical Advisory Board et al. were based, again, however, upon his agreeing to make a written commitment to take no reprisals against such persons, while still reserving his rights against the present defendants. Dr. Shulman refused to make such commitment and, as a result, was not

furnished with the full text of the Conference Committee report.

34. On May 23, 1967, the Board of Trustees of the Washington Hospital Center, in a plenary session, again unanimously adopted the recommendation of the Medical Advisory Board, the full Medical Board, the Department of Medicine and its Chairman, as contained in the report of the Joint Conference Committee.

35. On June 6, 1968, Dr. Shulman filed the instant action, requesting his demand for declaratory relief by reinstatement, again basing his demand upon the allegation that his constitutional due process rights had been violated by the defendants and asserting claims for damages on the grounds of breach of contract, malicious interference with professional and business relationships and violation of his rights under the Civil Rights Act, 28 U.S.C. § 1343 and 42 U.S.C. § 1983. Plaintiff's earlier claims of defamation contained in his original Complaint and the claims of antitrust and common law conspiracy contained in his Amended Complaint in Civil Action No. 1494–63 were abandoned.

### Conclusions of Law

1. As indicated in the Court's oral ruling at trial of this cause, the earlier opinions in Civil Action No. 1494–63, per Judge Holtzoff, on October 9, 1963 and per Judge Jones on August 5, 1964, are *res judicata* as to the "First Claim" of plaintiff's Complaint herein.

2. Independently of the Court's conclusion that the prior opinions of the Court in Civil Action No. 1494–63 are *res judicata* as to the "First Claim" of plaintiff's Complaint herein, and based on ample independent grounds in this record, the Washington Hospital Center is a "private" as distinct from a "public" institution, as defined by the authorities. It inherently possesses the right in its sole discretion, to exclude any physician from practicing within the Center. Its actions in so doing are not subject to judicial review absent a showing of a failure to conform to procedural requirements set forth in its own constitution, By-Laws or Rules and Regulations. No violation of the Center's procedural regulations has been shown.

3. Appointments to the Medical Staff of the Washington Hospital Center, in any category, are for one year only, requiring renewal each year, which renewal can only be effected by the Board of Trustees upon the express recommendation of the Medical Staff. Renewal is not in any sense "automatic" and failure to apprise a physician of a non-renewal of his privileges for a given year prior to January 1 of that year does not in any way alter the requirements of the applicable By-Laws in effect at the time of the actions complained of that staff appointments are renewable only on the recommendation of the Medical Staff.

4. No contract existed between the Washington Hospital Center and the plaintiff such as would entitle plaintiff to relief on his "Second Claim" herein.

5. No malicious interference with plaintiff's professional and business relationships has been shown herein and plaintiff is not entitled to relief on the "Third Claim" of his Complaint herein.

6. None of the actions complained of were taken "under color of law" in such a way as to entitle plaintiff to relief upon the "Fourth Claim" of his Complaint herein.

### Order

Wherefore, the premises considered, it is by the Court this 1st day of October, 1970,

Ordered, adjudged and decreed, that plaintiff's demand for declaratory, injunctive, compensatory and punitive relief be and it hereby is, denied and judgment is entered in favor of the defendants.