Grafton,
No. 6156a.

GLENN W. BRICKER, M.D.

*v.*

SCEVA SPEARE MEMORIÁL HOSPITAL.

July 29, 1971.

*Snierson, Chandler & Copithorne* ( *Mr. John P. Chandler* orally ) for the plaintiff, and for the town of Ashland as amicus curiae.

*Wescott, Millham & Dyer* ( *Mr. Peter V. Millham* orally ) for the defendant.

PER CURIAM. This is a bill in equity brought by a physician to enjoin a hospital from enforcing its decision not to reappoint him to the hospital's medical staff. Originally the petition was brought pro se by the plaintiff and a temporary injunction on the pleadings was denied by *King*, J. This order was sustained by this court on October 26, 1970. *Bricker* v. *Sceva Speare Hosp.,* 110 N.H. 412, 270 A.2d 358. On December 1, 1970, *King*. J., after an evidentiary hearing, issued a temporary injunction ordering the defendant to permit plaintiff the customary access of a medical staff member to the facilities of the hospital. Present counsel for the plaintiff entered the case originally for the town of Ashland, as amicus curiae and appeared for the plaintiff midway through the temporary injunction hearing.

On May 17, 1971, the Trial Court ( *Johnson,* J. ), after hearing, dismissed the petition of the plaintiff but stayed the discharge of the temporary injunction pending an appeal to this court. The plaintiff's exceptions were reserved and transferred by the trial court. The record includes the transcript of the hearing on the temporary injunction which was admitted in evidence at the trial on the merits.

Dr. Bricker came to Ashland from Pennsylvania in early 1963, and is the only physician practicing there. The Sceva Speare Memorial Hospital is located in Plymouth about six miles from Ashland. The next nearest hospitals to Ashland are in Franklin and Laconia, both about twenty-five miles away. The Sceva

Speare Hospital serves an area population of about twelve thousand. At the time this action was brought there were ten physicians on the active medical staff, including Dr. Bricker. All of the active medical staff, with the exception of Dr. Bricker and a pathologist from Laconia, were residents of Plymouth.

The defendant hospital is organized as a charitable corporation with a president and the usual officers including a board of directors of not less than eighteen nor more than twenty-four. In addition to certain special classifications such as consulting staff not germane to this case the medical bylaws provide for two classes of physicians entitled to hospital privileges. These are courtesy medical staff and active medical staff. Courtesy medical staff members are physicians eligible for active staff membership by qualification but are either first year members of the staff or otherwise ineligible for appointment to the active medical staff. Courtesy members are eligible for appointment to the active staff after one year. The bylaws provide that staff appointments shall be made by the board of directors for terms of one year on recommendation of the active medical staff prior to June 30th of each year. The credentials committee is made up of the active medical staff and charged with the duty of recommending the privileges to be extended to individual staff members and reviewing all staff appointments annually. Surgical privileges vary with individual physicians but no physician may treat a patient in the defendant hospital who is not a staff member.

Dr. Bricker was appointed to the courtesy staff on February 4, 1963 and to the active staff in June of 1966. He was reappointed in 1967, 1968 and 1969. The annual meeting of the medical staff in 1970 was not held until August 21, 1970. Dr. Bricker received a notice of this meeting but was hospitalized in the Laconia Hospital due to an accident and unable to attend the meeting. The remainder of the active staff present at the August 21st meeting voted to recommend reappointment of all the active staff except Dr. Bricker. This recommendation was adopted by the board of directors at their meeting on August 24, 1970, together with a direction that Dr. Bricker be notified of the action and his right of appeal under the bylaws.

The medical bylaws provide that where reappointment is not recommended the physician concerned shall be given " an opportunity of appearing before the Credentials Committee and Joint Conference Committee in joint session. " Dr. Bricker requested a hearing and appeared before the credentials committee and the

joint conference committee on October 14, 1970.

The joint conference committee consists of the president and vice-president of both the medical staff and the board of directors together with the administrator as an ex officio member. The meeting of October 14th appears to have been attended by all persons entitled to, including Dr. Bricker. During the meeting, which lasted some three and one-half hours, Dr. Bricker questioned each member of the active medical staff individually and learned that they were unanimous in opposing his reappointment. Some members of the staff gave their reasons for opposing him and others refused. The president of the hospital notified Dr. Bricker by letter dated October 20, 1970 that the board of directors had again voted unanimously not to reappoint him to the medical staff and the present action followed.

The initial question is the extent that the exclusion of a physician from staff privileges in a hospital is subject to review by the courts. Generally courts have drawn a distinction in such cases between public and private hospitals. *See* Annot., 37 A.L.R.3d 645 ( 1971 ); The Physician's Right to Hospital Staff Membership: The Public-Private Dichotomy, Wash. U.L.Q. 485 ( 1966 ). In the present case the acceptance of federal and town funds in addition to private contributions and income from patient care has not changed the private character of the defendent hospital. *Woodard* v. *Porter Hosp., Inc.,* 125 Vt. 419, 217 A.2d 37 ( 1966 ); *Khoury* v. *Community Memorial Hosp., Inc.*, 203 Va. 236, 123 S.E.2d 533 ( 1962 ); *Shulman* v. *Washington Hosp. Center*, 222 F. Supp. 59 ( D.D.C. 1963 ).

In the case of private hospitals some courts have applied the same limitations generally applicable to actions against private societies ( *see Bricker* v. *New Hampshire Medical Society*, 110 N.H. 469, 470, 272 A.2d 614, 616 ( 1970 )) and held that the exclusion of a physician from staff privileges rests within the discretion of the hospital authorities and is not subject to review by the courts. *Levin* v. *Sinai Hospital,* 186 Md. 174, 46 A.2d 298 ( 1946 ); Annot., 37 A.L.R.3d 645, 659, *s.* 3 ( 1971 ). More recently courts have recognized that the public has a substantial interest in the operation of private hospitals and that of necessity in the public interest some measure of control by the courts is called for. This has led to a rule that exclusion from staff privileges must be done in accordance with the bylaws of the hospital ( *Berberian* v. *Lancaster Osteopathic Hosp. Ass'n, Inc.*, 395 Pa. 257, 149 A.2d 456 ( 1959 ); *Joseph* v. *Passaic Hosp. Ass'n,* 26 N.J. 557, 141

A.2d 18 ( 1958 ) ) and will be reviewed by the courts and set aside if arbitrary, capricious or unreasonable. *Greisman* v. *New-comb Hosp.,* 40 N.J. 389, 192 A.2d 817 ( 1963 ); *Davidson* v. *Youngstown Hosp. Ass'n,* 19 Ohio Ct. App. 2d 246, 250 N.E.2d 892 ( 1969 ); *Woodard* v. *Porter Hosp., Inc. supra*; Annot., 37 A.L.R.3d 645, 661, *s.* 3 ( b ).

The hearing accorded Dr. Bricker was found by the trial court to be substantially in accordance with the bylaws and gave him an opportunity to question the credentials committee and state his reasons why he should be reappointed. The plaintiff argues that he was denied due process by this procedure since he was not given a statement of the charges against him prior to the hearing. The trial court found that Dr. Bricker's objectionable actions were adequately made known to him by formal notifications and in-formal discussions for a long period prior to the hearing and these actions were adequately reviewed at this meeting. The evi-dence supported this finding and that the hearing accorded the plaintiff a fair opportunity to urge reconsideration of the board's action. " All that is required is for the board to be fully informed so that it may make an intelligent and reasonable judgment in good faith . . . . " *Sussman* v. *Overlook Hosp. Ass'n,* 95 N.J. Super. 418, 425, 231 A.2d 389, 393 ( 1967 ).

The plaintiff urges that it was error for the trial court not to limit the evidence introduced before it to matters presented to the joint conference committee and the credentials committee. The issue before the court was similar to that in zoing appeals where the court is concerned with whether the action of a zoning board of adjustment was " unjust and unreasonable. " It has been held the court may properly in those cases consider additional evidence not presented to the board to assist it in evaluating the action of the board ( *Sweeney* v. *Dover,* 108 N.H. 307, 234 A.2d 521 ( 1967 ); *Vannah* v. *Bedford,* 111 N.H. 105, 276 A.2d 253 ( 1971 ) ) and the same is the rule in this case.

It is clear from the testimony and the findings of fact made by both *King,* J. after hearing on the preliminary injunction and *Johnson,* J. in the dismissal of the action that objections to the professional competency of the plaintiff were not a major factor in his nonreappointment. In his findings of fact *Johnson,* J. states the reasons as follows: " The Court finds as a fact that Dr. Brick-er has been a disruptive force at the Sceva Speare Memorial Hospital; that he has acted in a way detrimental to the best inter-

ests of the institution; that he has acted in a way which is detrimental to the good practice of medicine by other members of the Medical Staff of the Hospital; that he has acted in a way which is disruptive to the nurses and other administrative staff of the Hospital; that he has conducted his personal life in such a way as to cause great personal concern and anxiety to the other members of the Medical Staff and the Directors of the Hospital; and that his actions have had, in general, an adverse effect upon the smooth-working relationships so necessary for adequate and essential health care. Finally, the Court finds that Dr. Bricker has conducted his medical practice, on occasion, in a way that could at best be described as unwise and at worst as highly unprofessional . . . ."

The evidence which was extensive and included testimony by four members of the medical staff, the lay president and vice-president of the board and the administrator supports these findings. On the basis of these findings the trial court found that the action of the defendant in not reappointing Dr. Bricker was neither arbitrary nor capricious and was reasonable under all the circumstances.

The denial of hospital privileges to the plaintiff under the circumstances of this case seriously affects the ability of the plaintiff to practice medicine in the town of Ashland. The town of Ashland is deprived of effective medical service by the failure of the board to reappoint the plaintiff. The board on the other hand had a primary duty to maintain the hospital for service to all the public in its area including the town of Ashland. Where as in this case the staff is small a disruptive member is more destructive of efficiency than in the case of a large staff where doctors work less frequently together and on a less personal basis. The other physicians on the staff were unanimous in their testimony that his presence on the staff was disruptive of the hospital and the medical staff. The court found that the plaintiff was an active disruptive force on the hospital operation. Weighing the respective interests the court thus concluded that the board was justified in refusing to reappoint the plaintiff to protect and preserve the hospital. *See Glass* v. *Doctors Hosp., Inc.,* 213 Md. 44, 131 A.2d 254 ( 1957 ); *Hagan* v. *Osteopathic Gen. Hosp.,* 102 R.I. 717, 232 A.2d 596 ( 1967 ).

The evidence supports the trial court's finding that defendant's actions were not arbitrary, capricious or unreasonable and the decree dismissing the action is sustained.

The motion to remand for the taking of further testimony is denied. The additional affidavits filed in this court are merely cumulative to other affidavits already considered by the trial court in denying plaintiff's motion for a new trial.

*Exceptions overruled; petition dismissed.*