**Basdeo BALKISSOON, Appellant,**

v.

**CAPITOL HILL HOSPITAL, Appellee.**

No. 86–1501.

District of Columbia Court of Appeals.

Argued Oct. 26, 1988.
Decided April 27, 1989.

Edward C. Bou, Washington, D.C., for appellant.

Richard W. Boone, Arlington, Va., for appellee.

Before MACK and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.

**GALLAGHER, Senior Judge:**

Doctor Basdeo Balkissoon, appellant, brought this action seeking injunctive and monetary relief[1] against Capitol Hill Hospital after the Hospital denied him staff privileges. He appeals from the trial court's grant of summary judgment for the Hospital. We reverse and remand.

### I.

Capitol Hill Hospital (the Hospital), appellee, is a private hospital in the District of Columbia. Appellant had staff privileges at the Capitol Hill Hospital from January 1973 until February 1982. In 1980, restrictions were placed on his privileges and, in 1981, the Hospital initiated complete revocation of his privileges. He was granted temporary privileges pending completion of the revocation procedures.[2] These procedures were not completed by the end of 1981 and, as all practitioners desiring continuation of their privileges are required to do each year, appellant filed an application for reappointment to the Hospital staff for 1982. The Medical Executive Committee then met to consider a recommendation of the Medical Staff Credentials Committee to deny appellant's application for reappointment to the medical staff. The Medical Executive Committee voted to deny the application for failure to satisfy minimal standards, and appellant was so notified. His privileges were apparently then suspended. He requested a hearing by an ad hoc committee. After a three day hearing, the ad

---

1. As to monetary relief, this is a question for resolution in the trial court in the light of this opinion and upon consideration of the ultimate result at the Hospital and trial court levels after remand.

2. Appellant did not designate the bylaws for inclusion in the record on appeal. We have, however, brought up from the trial court those bylaws included in the trial court record. *See* D.C.App.R. 10(e).

   The procedures mandated by the bylaws are identical for revocation of privileges or a denial of an application for privileges. A standing committee of doctors, the Medical Executive Committee, makes an initial recommendation as to the action to be taken. If the action is adverse to the doctor's status at the hospital, the bylaws direct that, upon the practitioner's request, an ad hoc committee from the Medical Executive Committee be convened as a factfinding body before which the practitioner is entitled to present evidence. The bylaws direct that this ad hoc factfinding committee is to make a written report and recommendation to the Medical Executive Committee that it reject, deny, or affirm its initial recommendation. The Medical Executive Committee must consider the ad hoc committee's report before making a final recommendation to the Governing Body of the Hospital. If the Medical Executive Committee maintains its adverse recommendation, the practitioner has a right of appeal to the Governing Body. On appeal, the Governing Body is to review the record to ensure that the Medical Executive Committee's recommendation is justified and not arbitrary or capricious.

hoc committee issued a report containing a recommendation that appellant's privileges be restricted. This report was terse and conclusory:

> The meeting opened at 3 p.m. on April 2, 1982, and closed at 5:25 p.m. After considerable deliberation and review of all of the comments by the witnesses which Dr. Basdeo Balkissoon had produced plus a review of Dr. Balkissoon's conversations and also the conversations by Dr. James Trone [sic].
>
> It was the opinion of the members of the Committee that Dr. Basdeo Balkissoon be considered for privileges in Surgery only and that all of his admissions to the Hospital be monitored by the Chief of Surgery or by his designate and if at the end of a three month period there were any indications of substandard clinical or surgical practice that a three member committee be again commenced to review all of these cases. It was definitely suggested all family practice and gyn privileges not be granted.

The president of the Medical Staff of the Hospital sought the opinion of legal counsel. After examining the bylaws and the report, in a letter dated May 1982, counsel for the Hospital wrote to the president of the Medical Staff that:

> [W]e have reluctantly concluded that the Committee's findings are procedurally defective and do not adhere to the procedural due process afforded Dr. Balkissoon by the By–Laws. Accordingly, they cannot be acted upon effectively by either the Medical Executive Committee or the governing body in their present form.
>
> \* \* \* \* \* \*
>
> Accordingly, under the applicable By–Law provisions it is impossible for the Medical Executive Committee or the governing body to discharge their appointment responsibilities with regard to Dr.

Balkissoon based upon the existing recommendation.

\* \* \* \* \* \*

In this case, regrettably, the Ad Hoc Committee did not fulfill its fact finding function. The report of the Committee is *conclusory in nature and provides no useable input regarding the clinical qualifications of Dr. Balkissoon.* Accordingly, the Medical Executive Committee is, in effect, right back where it started and it must, regrettably, either proceed without the factual input which the Committee's report would have afforded, or seek further amplification from the committee.[3]

(Emphasis added.)

Counsel recommended that the Hospital seek appellant's agreement to reconvene the committee and, if appellant did not agree, that the Medical Executive Committee should consider the report as it was.[4]

Acting upon this opinion, the president of the Medical Staff informed appellant that "the *form of the committee's recommendations* is contrary to the By–Laws of the Medical Staff" and requested that he consent "to reconvening the Ad Hoc Committee, pursuant to counsel's recommendations, to enable them to clarify their findings in the interest of fairness to you." (Emphasis added.) Appellant never directly responded to the request for his consent, but his attorney wrote on his behalf that "it comes as a great shock to learn that the hospital still has not restored Dr. Balkissoon's full medical privileges ... in spite of the fact that the hearing conducted over two months ago exonerated him from any derogatory medical charges."

On June 3, 1982, the Hospital notified appellant that the Hospital, on the advice of counsel, given after Hospital counsel had spoken with appellant's counsel, would consider the letter from appellant's attorney a rejection of the proposal to reconvene

---

3. Counsel also noted that the nature of the recommendations made in the report, to the extent that they could be deciphered, substantially deviated from what the bylaws contemplated.

4. If appellant consented, Hospital counsel suggested that a joint petition be made to the chairman of the ad hoc committee for an additional hearing, the purpose of which would be "merely to 'argue' each side's position in this case and to 'instruct' the committee on what its permissible range of findings and actions was...."

the ad hoc committee to clarify its report. In light of this rejection, appellant was informed, the Medical Executive Committee would consider the report, as written, at its next regularly scheduled meeting. On June 6, 1982, appellant filed a complaint in the District of Columbia Superior Court seeking injunctive relief and money damages. The trial court dismissed the complaint without prejudice on the basis that appellant had failed to exhaust his administrative remedies.

Having suspended action on appellant's application for privileges while his suit was pending in the trial court, the Medical Executive Committee reconvened after the court dismissed the complaint, and on August 4, 1982, informed appellant that it had voted to recommend to the Governing Body that his application for reappointment be denied. He appealed to the Governing Body and an Appellate Review Committee of the Governing Body held a hearing at which appellant and his attorney were present. The Committee upheld the Medical Executive Committee's recommendation which, as related, was fundamentally defective. The Governing Body subsequently adopted the recommendation to deny appellant's application for reappointment. Appellant was informed of this decision on December 22, 1982.

Appellant instituted this lawsuit in October of 1984. He claimed that the Hospital had wrongly denied him staff privileges and substantive and procedural due process by denying his application for reappointment without following the procedures in its bylaws. He sought money damages

and an injunction requiring the Hospital to grant him staff privileges. The trial court granted the Hospital's motion for summary judgment. Although the court concluded that the ad hoc committee's report was clearly not in accordance with the bylaws, it held that the doctor's failure to consent had "the effect of a waiver in this case" of any subsequent complaint that the Hospital's decision was arbitrary because of the deficiency in the report.

II.

When reviewing a motion for summary judgment, this court makes an independent review of the record. *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983). The court will not affirm a grant of summary judgment unless there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*

That appellant may not have asserted facts from which we could conclude that the decision of the Hospital was "state action," such as to require that the Hospital afford appellant due process in the constitutional sense,[5] is not dispositive of the case, for the Hospital must still afford appellant at least all the process and protections encompassed in its bylaws. *Shulman v. Washington Hospital Center,* 222 F.Supp. 59 (D.D.C.1963), *rev'd on other grounds,* 121 U.S.App.D.C. 64, 348 F.2d 70 (1965), *on remand,* 319 F.Supp. 252, 255 (D.D.C.1970); *Bhatnagar v. Mid–Maine Medical Center,* 510 A.2d 233, 234 (Me. 1986); *Anne Arundel General Hospital, Inc. v. O'Brien,* 49 Md.App. 362, 432 A.2d

**5.** *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), and *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), persuade us that no state action exists here. Federal courts and many state courts that have confronted this issue have refused to find that government regulation and a hospital's receipt of government funds raises the hospital's staffing decisions to state action. *See, e.g., Loh–Seng Yo v. Cibola General Hospital,* 706 F.2d 306 (10th Cir.1983); *Modaber v. Culpeper Memorial Hospital, Inc.,* 674 F.2d 1023, 1025–26 (4th Cir.1982); *Musso v. Suriano,* 586 F.2d 59, 62–63 (7th Cir.1978), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1534, 59 L.Ed.2d 788 (1979); *Hodge v. Paoli Memorial Hospital,* 576 F.2d 563 (3d Cir.1978); *Schlein v. Milford*

*Hospital, Inc.,* 561 F.2d 427 (2d Cir.1977); *Briscoe v. Bock,* 540 F.2d 392 (8th Cir.1976; *Taylor v. St. Vincent's Hospital,* 523 F.2d 75, 77–78 (9th Cir.1975), *cert. denied,* 424 U.S. 948, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976); *Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873 (5th Cir.), *cert. denied,* 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975); *Jackson v. Norton–Children's Hospital, Inc.,* 487 F.2d 502 (6th Cir.1973), *cert. denied,* 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974); *Hawkins v. Kinsie,* 540 P.2d 345, 348 (Colo.App.1975); *Gotsis v. Lorain Community Hospital,* 46 Ohio App.2d 8, 15, 345 N.E. 2d 641, 646 (1974); *Bricker v. Sceva Speare Memorial Hospital,* 111 N.H. 276, 281 A.2d 589, 592, *cert. denied,* 404 U.S. 995, 92 S.Ct. 535, 30 L.Ed.2d 547 (1971).

483, 488 (1981); *Scappatura v. Baptist Hospital of Phoenix,* 120 Ariz. 204, 208, 584 P.2d 1195, 1199 (Ct.App.1978); *Bricker v. Sceva Speare Memorial Hospital,* 111 N.H. 276, 279, 281 A.2d 589, 592, *cert. denied,* 404 U.S. 995, 92 S.Ct. 535, 30 L.Ed. 2d 547 (1971); *Joseph v. Passaic Hospital Association,* 26 N.J. 557, 567, 141 A.2d 18, 24 (1958); *Berberian v. Lancaster Osteopathic Hospital Association,* 395 Pa. 257, 263–64, 149 A.2d 456, 458–59 (1959).[6] All involved agree that the report of the ad hoc factfinding committee fundamentally violated the requirements of the bylaws. There were no factual findings nor a statement of reasons as a basis for meaningful review. The Hospital contends that appellant, by failing to consent to reconvening the committee, waived his right to object to this defect. We disagree.

■ The Hospital's obligation to follow its bylaws does not arise only from a contractual relationship with appellant. The public has a substantial interest in the operation of hospitals, public or private.

Hospitals exist to provide health care to the public. In addition to serving the needs of their patients, hospitals also provide a place of employment for doctors and other professionals. The privilege to admit and treat patients at a hospital can be critical to a doctor's ability to practice his profession and to treat patients. Both doctors and their patients can suffer if otherwise qualified doctors are wrongly denied staff privileges.

*Nanavati, supra* note 6, 107 N.J. at 248, 526 A.2d at 701.[7] Thus, while sharing the interest of hospitals that only qualified doctors be given staff privileges, the public also has an interest in assuring that staff decisions are not made arbitrarily. A hospital's failure to comply with material procedures delineated in its bylaws is inherently arbitrary. *Cf. United States v. Heffner,* 420 F.2d 809, 812 (4th Cir.1969) (arbitrariness inherent in agency's violations of its own procedures). As with an administrative agency of the government, requiring a hospital to follow its bylaws reduces the risk of arbitrary decisions without unnecessary interference with those who have the duty and the expertise to make the decisions.[8] Thus, although the bylaws may create contractual rights, the Hospital's obligation to act in accordance with its bylaws is independent of any contractual right of appellant.

If the bylaws are to be meaningful, the Hospital cannot technically comply with them while defeating the purpose inherent in the process they create. The Hospital's bylaws create a decision-making process that affords appellant certain protections and assures that the Hospital does not deny a doctor's staff privileges on the basis of unsupported accusations or on an arbitrary and capricious basis. The task of the Governing Body upon an appeal from a negative recommendation of the Medical Executive Committee—to ensure that the decision is not arbitrary—reflects this purpose.

**6.** A number of jurisdictions have engaged in a more expansive review of private hospital staffing decisions. *See, e.g., Anton v. San Antonio Community Hospital,* 19 Cal.3d 802, 567 P.2d 1162, 140 Cal.Rptr. 442 (1977) (private hospital's decision to deny privileges subject to same review as public hospital; trial court erred in not exercising independent judgment on the evidence to determine whether findings of hospital body supported); *Nanavati v. Burdette Tomlin Memorial Hospital,* 107 N.J. 240, 526 A.2d 697 (1987) (denial of staff privileges must be supported by sufficient reliable evidence); *Kelly v. St. Vincent Hospital,* 102 N.M. 201, 692 P.2d 1350 (Ct.App.1984) (denial may not be arbitrary or capricious); *Woodard v. Porter Hospital, Inc.,* 125 Vt. 419, 217 A.2d 37 (1966) (denial may not be based on unreasonable, arbitrary, capricious or discriminatory grounds).

**7.** D.C.Code §§ 32–1307, –1309 (1988 Repl.) reflect the District of Columbia government's concern that hospitals make staffing decisions fairly and on proper grounds. This statute was not in effect at the time the Hospital denied appellant staff privileges.

**8.** The actions of hospitals in regard to staff privileges can be analogized to administrative agencies. "[B]oth the administrative agency and the hospital board of trustees do exercise discretion and bring expertise to their respective tasks. Both must also pay due respect to procedural safeguards whether because of constitutional due process or fundamental fairness." *Garrow v. Elizabeth General Hospital,* 79 N.J. 549, 401 A.2d 533, 537–38 (1979) (citations omitted).

The Medical Executive Committee and the Governing Body of the Hospital failed to recognize the importance of the ad hoc committee's report in the administrative procedure created in its bylaws. Without a proper report by the factfinding committee,[9] the subsequent proceedings were empty formalities. The bylaws directed the Medical Executive Committee to consider the factfinding report. The Committee had virtually nothing to consider, and thus, when reconsidering its initial recommendation to deny appellant privileges, it did nothing more than affirm its prior decision. Because the Medical Executive Committee's recommendation failed to take into account the results of the ad hoc committee hearing, the recommendation was inherently arbitrary. Thus, when the Governing Body reviewed the recommendation and affirmed it, it did not properly perform its role in the process created by the bylaws. The decision-making procedure was, in effect, aborted after the Medical Executive Committee's initial recommendation. The result is the same as if a hearing had never been held.[10]

The failure of the ad hoc committee to write a coherent, comprehensible report, with factfindings, reasons and conclusions, was the failure of the committee. Appellant's role in that particular hearing process had been completed. The hearing had been closed. The Hospital needed nothing more from him to make a decision based on the evidence. It was the duty of the ad hoc factfinding committee to conduct an appropriate hearing, make findings of fact, and state its reasons and conclusions, so as to provide a basis upon which the Medical Executive Committee and, subsequently, the Governing Body could make a rational decision.[11] This was not done, and appellant therefore was not accorded the fair hearing envisioned in the bylaws. The Medical Executive Committee should have simply returned what is admitted to be a fundamentally defective report to the ad hoc factfinding committee to prepare it properly. The proceeding then would have been in a posture for meaningful reconsideration by the Medical Executive Committee and review by the Governing Body. This was not done and the procedural process was aborted on the mistaken basis that the doctor somehow defaulted by way of the ad hoc committee's dereliction.

Accordingly, we conclude that the Hospital is not entitled to judgment as a matter of law and, thus, the trial court erred in granting summary judgment for the Hospital. The trial court concluded that appellant had waived his right to complain of the Hospital's use of the deficient ad hoc committee's report. This conclusion was erroneous and we find that the undisputed facts entitle appellant to relief as a matter of law.[12] While staff privileges are grant-

9. The opinion of Hospital counsel stated that the report rendered by the ad hoc committee was of no use.

10. D.C.Code § 32–1307(f) (1988 Repl.) lists a hearing and a written decision "containing the explicit reasons for taking the action and substantially based on the evidence produced at the hearing" as one of several minimum procedural protections that a hospital must offer before revoking staff membership. While this statute was not in effect at the time appellant's privileges were denied, the Hospital's bylaws and basic concepts of fairness were. A fair hearing has long been the centerpiece of fair process. *See Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 167–68, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring):

The high social and moral values inherent in the procedural safeguard of a fair hearing are attested by the narrowness and rarity of the instances when we have sustained executive action even though it did not observe the customary standards of procedural fairness....

* * * * * *

[S]ummary administrative procedure may be sanctioned by history or obvious necessity. But these are so rare to be isolated instances. (Citations omitted.)

11. This report made after the hearing need not be elaborate or formalistic. It need only give the reviewer the salient facts and accompanying reasons for its recommendation. Doctors do much the same thing in making a written diagnosis.

12. On this record, one cannot reasonably conclude that appellant, in effect, failed to exhaust administrative remedies. The dereliction was on the part of the ad hoc committee because of the fundamentally defective report. It was the duty of the committee, not appellant, to issue a report affording a rational basis for an ultimate decision.

ed for a one-year period, the record shows that when appellant's previous one-year term expired without completion of the revocation process, the Hospital, acting upon appellant's application for reappointment, continued appellant's privileges and reinitiated the review process, rather than simply letting appellant's privileges expire. This procedure accords with fundamental fairness and the Hospital's Bylaws. (See Hospital Bylaw Art. VIII, § 1, subd. A.)

We conclude we should reverse the judgment of the trial court and direct the trial court to remand to the Hospital for further proceedings consistent with this opinion. Whether appellant is ultimately entitled to staff privileges is not for this court to decide. Hospital staffing decisions must be left to the expertise of the staff and administration of the Hospital. We will not substitute our judgment for theirs.[13] Appellant was apparently suspended during the course of the Hospital administrative proceeding. We see no reason why this suspension should not remain in force during the completion of the administrative process, which, considering the passage of time, should resume on an expedited basis. It would appear that this process may properly resume from the point where the Hos-

pital found the ad hoc committee's report fatally defective. The ad hoc committee should proceed to supply the vital factual findings and reasons for its recommendation, and the proceeding may then resume its course.[14]

Reversed with instructions.

SCHWELB, Associate Judge, dissenting:

I

I find myself in the rather odd position of agreeing with almost everything Judge Gallagher has written for the majority except the result. If Dr. Balkissoon had objected to the report of the Ad Hoc Committee (AHC) as inadequate and had demanded that the matter be, in effect, remanded to the AHC with directions to prepare a proper analysis, and if the Medical Executive Committee (MEC) had refused his demand and insisted on acting on the deficient report, then I would agree that Dr. Balkissoon could argue persuasively that his rights under the by-laws had been violated.

In this unusual case, however, everything is topsy-turvy. It was the Hospital that wished to proceed in the correct man-

---

The conclusion of the dissenting opinion is based upon an alleged default of the doctor. The fact is, however, that it was up to the Hospital authorities to make a rational decision, as required implicitly by its bylaws and elementary fairness. Until this is done, no obligation properly can be attributed to the doctor, and no unlearned observations by the doctor had material significance. Only the Hospital ad hoc committee could restore the proceedings in this case to a proper course.

In this jurisdiction, medical administrative proceedings are in an early stage of development. In the majority opinion, we provide that if, after the proceeding is put back on course with a report, acceptable in its form, the doctor no longer wishes to contest his staff eligibility, the proceeding may end with the entry of an appropriate decision. See note 14. The dissent would take this step now. We think that on this record and on the state of the art in these medical proceedings, this would be premature.

**13.** *See Shulman v. Washington Hospital Center,* 222 F.Supp. 59, 64 (D.D.C.1963), *rev'd on other grounds,* 121 U.S.App.D.C. 64, 348 F.2d 70 (1965), *on remand,* 319 F.Supp. 252 (D.D.C. 1970):

There are sound reasons that lead the courts not to interfere in these matters. Judicial tribunals are not equipped to review the action of hospital authorities in selecting or refusing to appoint members of medical staffs, declining to renew appointments previously made, or excluding physicians or surgeons from hospital facilities.... Not all professional men ... are of identical ability, competence, or experience, or of equal reliability, character, and standards of ethics.... In matters such as these the courts are not in a position to substitute their judgment for that of professional groups.

**14.** If for some reason, such as the passage of time, this starting point does not appear feasible, the Hospital should reinitiate the hearing process, assuming, of course, that appellant still wishes to contest the Medical Executive Committee's initial recommendation. If he no longer wishes to contest the recommendation, then, of course, this would end the proceeding and his staff privileges, and the Hospital should enter an appropriate decision to this effect.

ner, and which (I think unnecessarily)[1] requested Dr. Balkissoon's counsel to agree to further proceedings before the AHC. It was Dr. Balkissoon who refused to consent, claiming implausibly through his counsel's letter of May 26, 1982 that the hearing before the AHC had "exonerated him from any derogatory medical charges," and that all his privileges should be restored forthwith. At oral argument, Dr. Balkissoon's counsel acknowledged with commendable candor that he and his client had declined to go along with further proceedings before the AHC because they believed that the record as of the time of the defective report was more favorable to Dr. Balkissoon than it would have been after such contemplated proceedings. Having in effect insisted that the AHC report was exculpatory and that no further proceedings were necessary, I do not see how Dr. Balkissoon can now be heard to complain that there were no further proceedings.

Dr. Balkissoon's claim in this court reminds me of what is, I hope, the apocryphal tale of the man who killed his mother and father and then pleaded for mercy on the grounds that he was an orphan. I think Judge Burgess' remarks in granting summary judgment for the Hospital were right on target:

> I would consider it to be the effect of a waiver in this case, that is to say it was presented to the doctor, we have something we think you're entitled to under the Bylaws. We're willing to write up a report and make our factual findings, do the right thing. Do you want us to do this, or are you willing to go on the record as is, and he wants to go on the record as is. He doesn't want the process that, as Mr. Boone says, that may be due him. If he doesn't want the process that may be due him, whatever his motivations are, and in this Mr. Boone says his motivations are that, as I understand it, he had a good recommendation, he then can't come back and com-

plain.... And therefore, if he comes in later on, dissatisfied with the Board of Directors' decision and says, I wasn't accorded the process that I rejected, he's not—he's not as a matter of law, in my judgment, able to come in and say the Board of Directors was arbitrary.[2]

This court has repeatedly held, in the somewhat analogous context of administrative agency proceedings, that where a party has failed to challenge a ruling or procedure at the administrative level, he or she may not seek judicial reversal of that ruling. *See, e.g., Arthur v. D.C. Examining Board,* 459 A.2d 141, 145 n. 3 (D.C.1983), and authorities there cited. Claims which are not made before the agency may not be presented for the first time to the reviewing court. *Plaquemines Port v. Federal Maritime Com'n,* 267 U.S.App.D.C. 238, 253, 838 F.2d 536, 551 (1988) (Bork, J.). In this case, Dr. Balkissoon not only neglected to challenge the failure to conduct further proceedings before the AHC, but insisted that none be conducted. I submit that the reasoning of *Arthur* and *Plaquemines Port* applies *a fortiori.*

## II

In principle, I agree that if something has been done in the wrong way, then the mistake should be corrected even belatedly. I do think it worth noting the practical consequences of the court's decision.

My review of the file indicates that the Medical Director of the Hospital first contacted Dr. Balkissoon about the alleged irregularities on February 1, 1980. The monitoring of his admissions began three days later. More than nine years after these events, the court is directing that proceedings resume as of April 2, 1982, the date of the inadequate AHC report. Even assuming that all of the players are still in place (or that others can readily be found in their stead), the reconstruction of the conduct that led to the sanctions against Dr.

---

1. Although it may have been unnecessary for the Hospital to seek Dr. Balkissoon's consent, my point is that the doctor, having opposed the procedure, cannot complain that it was not followed.

2. Or, more specifically, not in compliance with the by-laws.

Balkissoon will not be easy. Moreover, if events progress no more rapidly the second time from that point of departure, we might be deciding a second appeal in or about 1995.

Obviously, litigation delays do not provide a basis for affirming a decision if it is indeed wrong. In this case, however, I believe not only that Judge Burgess was right as a matter of law but also that his decision, if upheld, would contribute to the just, (relatively) speedy, and (I hope) less expensive resolution of this protracted controversy.

### III

Judge Gallagher's lucid analysis of the scope of judicial review in this kind of case, and of the public interest in hospital staffing decisions, has made a substantial contribution to an area of the law in which there is little precedent in this jurisdiction. Nevertheless, for the reasons described above, I respectfully dissent.