MAURICE L. SILVER, M.D., Plaintiff-Appellant, *v.* CASTLE MEMORIAL HOSPITAL, a Hawaii non-profit corporation, et al., Defendants-Appellees

No. 4998

May 24, 1972

RICHARDSON, C.J., ABE, LEVINSON AND KOBAYASHI, JJ., AND CIRCUIT JUDGE VITOUSEK IN PLACE OF MARUMOTO, J., DISQUALIFIED

OPINION OF THE COURT BY KOBAYASHI, J.

Appellant, Dr. Silver, a neurosurgeon, appeals from the judgment of the trial court granting directed verdicts in favor of appellees. The trial court found in favor of appellees, defendants below, on all counts alleged by appellant, including a conspiracy in· violation of antitrust laws of the State of Hawaii, a common law conspiracy to monopolize and restrain competition, defamation by certain individual appellees, and an injunction against appellee, Castle Memorial Hospital,

compelling them to permit appellant to use their facilities.

For an adequate disposition of this case the facts need be simply stated.

Appellant first applied for staff privileges at appellee hospital in 1963. After having been given a hearing, appellant's application was denied. In 1965 appellant reapplied for privileges and in 1966 the appellee's hospital board of trustees granted appellant temporary surgery privileges for one year under observation by other doctors. At the close of the probationary period an investigation was conducted into the performance of appellant. The hospital board, acting with recommendation of the committee that had conducted the investigation, decided not to renew appellant's staff privileges. Appellant was granted a hearing and at that time, for the first time, was confronted with the allegations against him and given an opportunity to make an explanation. The earlier decision to deny privileges was upheld.

We find appellant's allegations of conspiracy, defamation, and antitrust violations to be without merit and as to those issues the judgment of the trial court is affirmed. Appellant is not left, however, without a viable claim against appellee Castle Memorial Hospital. This case presents the issue of whether the administrative decision of a private hospital in refusing to grant licensed doctors staff privileges is subject to judicial review.[1] This question has been decided in other jurisdictions on the basis of two distinctly divergent views.

## JUDICIAL REVIEW OF PRIVATE HOSPITAL

The majority of jurisdictions have held that a private hospital, as opposed to a public hospital, has the absolute

---

[1]The immediate issue has been the subject of much recent law review commentary. *E.g.*, Herring, *Hospital Privileges*, 14 CLEV.-MAR. L. REV. 472 (1965); Southwick, *Hospital Medical Staff Privileges*, 18 DE PAUL L. REV. 655 (1969); Note, *Denial of Hospital Staff Privileges: Hearing and Judicial Review*, 56 IOWA L. REV. 1351 (1971); Note,. *Expulsion and Exclusion from Hospital Practice and Organized Medical Societies*, 15 RUTG. L. REV. 327 (1961); Note, *Hospital Staff Privileges: The Need for Legislation*, 17 STAN. L. REV. 900 (1965); Note, *The Physician's Right to Hospital Staff Membership: The Public-Private Dichotomy*, 1966 WASH. U.L.Q. 485.

right to exclude any physician from practicing therein. Such a decision of a private hospital board has been held not subject to judicial review,[2] unless the hospital has failed to conform to its own procedural requirements as set forth in its constitution, by-laws, or rules and regulations. The rationale of the majority position has been aptly set forth in *Shulman v. Washington Hospital Center*, 222 F. Supp. 59, 64 (D.D.C. 1963).

There are sound reasons that lead the courts not to interfere in these matters. Judicial tribunals are not equipped to review the action of hospital authorities in selecting or refusing to appoint members of medical staffs, declining to renew appointments previously made, or excluding physicians or surgeons from hospital facilities. The authorities of a hospital necessarily and naturally endeavor to their utmost to serve in the best possible manner the sick and the afflicted who knock at their door. Not all professional men, be they physicians, lawyers, or members of other professions, are of identical ability, competence, or experience, or of equal reliability, character, and standards of ethics. The mere fact that a person is admitted or licensed to practice his profession does not justify any inference beyond the conclusion that he has met the minimum requirements and possesses the minimum qualifications for that purpose. Necessarily

---

[2]Moore v. Andalusia Hosp., Inc., 284 Ala. 259, 224 So.2d 617 (1969); Edson v. Griffin Hosp., 21 Conn. Supp. 55, 144 A.2d 341 (1958); West Coast Hosp. Ass'n v. Hoare, 64 So.2d 293 (Fla. 1953); Mauer v. Highland Park Hosp. Foundation, 90 Ill. App. 2d 409, 232 N.E.2d 776 (1967); Natale v. Sisters of Mercy of Council Bluffs, 243 Iowa 582, 52 N.W.2d 701 (1952); Hughes v. Good Samaritan Hosp., 289 Ky. 123, 158 S.W.2d 159 (1942); Clark v. Physicians and Surgeons Hosp., Inc., 121 So.2d 752 (La. Ct. App. 1960); Glass v. Doctors Hosp., Inc., 213 Md. 44, 131 A.2d 254 (1957); Akopiantz v. Board of County Comm'rs, 65 N.M. 125, 333 P.2d 611 (1958); Leider v. Beth Israel Hosp. Ass'n, 11 N.Y.2d 205, 227 N.Y.S.2d 900, 182 N.E.2d 393 (1962); Berberian v. Lancaster Osteopathic Hosp. Ass'n, Inc., 395 Pa. 257, 149 A.2d 456 (1959); Hagan v. Osteopathic Gen. Hosp. of Rhode Island, 102 R.I. 717, 232 A.2d 596 (1967); Harris v. Thomas, 217 S.W. 1068 (Tex. Civ. App. 1920); Khoury v. Community Memorial Hosp., Inc., 203 Va. 236, 123 S.E.2d 533 (1962); Group Health Cooperative v. King County Medical Soc'y, 39 Wash.2d 586, 237 P.2d 737 (1951); State ex rel. Sams v. Ohio Valley General Hosp. Ass'n, 149 W.Va. 229, 140 S.E.2d 457 (1965); Johnson v. City of Ripon, 259 Wis. 84, 47 N.W.2d 328 (1951).

hospitals endeavor to secure the most competent and experienced staff for their patients. Without regard to the absence of any legal liability, the hospital in admitting a physician or surgeon to its facilities extends a moral imprimatur to him in the eyes of the public. Moreover not all professional men have a personality that enables them to work in harmony with others, and to inspire confidence in their fellows and in patients. These factors are of importance and here, too, there is room for selection. In matters such as these the courts are not in a position to substitute their judgment for that of professional groups.

The private status of a private hospital has been held to constitute sufficient justification for the existence of an absolute exclusionary right. *Edson v. Griffin Hospital*, 21 Conn. Supp. 55, 144 A.2d 341 (1958). It is reasoned that even though a doctor may have exemplary qualifications, he has no vested right to practice in a private hospital but merely a privilege which may be granted or denied at the election of the private corporation in exercising its fundamental right to manage its own internal affairs.[3]

We agree that the board of directors of a private hospital should have broad discretionary power in determining which doctors will be given staff privileges and on what basis. There are many justifications for such power aside from the general malpractice considerations. Apparently the state licensing procedure does not distinguish between general practitioners and specialists such as neurosurgeons. Nor does the state licensing system provide for adequate periodic review of a doctor's skill and performance, both of which are of primary importance to the beneficiaries of the services of the hospital

---

[3]Such a view may not today provide for an automatic nonreviewable exclusionary right, however. In cases involving discriminatory exclusionary practices, federal courts have ruled that when a private hospital has sufficient governmental involvement to constitute state action the federal constitutional standards of due process and equal protection are subject to violation. *E.g.*, Eaton v. Grubbs, 329 F.2d 710, 714-15 (4th Cir. 1964); Simkins v. Moses H. Cone Memorial Hosp., 323 F.2d 959, 967 (4th Cir. 1963), *cert. denied*, 376 U.S. 938 (1964); Citta v. Delaware Valley Hosp., 313 F. Supp. 301, 307 (E.D. Pa. 1970).

and doctors involved, the patients themselves. When considering the interest of the patient, it is not enough that his doctor possess the necessary skills of his profession. The absence of a compatible team working together could impair the doctor's performance and consequently undermine the effectiveness of the treatment given the patient.[4] All of the above criteria are and should be weighed by the board in granting staff privileges. This staff privileges determination is, as a system, the general method utilized by hospitals throughout the country for screening and reviewing applicants in terms of qualifications, current skills, performance, personality and character.

We cannot agree, however, that the discretionary power of a hospital is absolute or that a decision of a private hospital board in refusing to grant a licensed doctor staff privileges is not subject to judicial review. The better rule[5] provides that such review be available as to whether the doctor excluded was afforded procedural due process, and as to whether an abuse of discretion by the hospital board occurred, resulting in an arbitrary, capricious or unreason-

---

[4]It has been pointed out that "considerations of team spirit and cooperativeness· can be as important as technical skill in recommendations for staff appointments; or, put another way, professional competence in hospital practice should, according to modern hospital theory, include qualities needed for cooperative staff work." Note, *Hospital Staff Privileges: The Need for Legislation,* 17 STAN. L. REV. 900, 905 (1965). The requirement that a doctor have a cooperative personality does not mean, however, that exclusion by a hospital board will be upheld for other than meritorious reasons. In this respect it has been held that "[a] denial of a physician's application upon the basis that his appointment will cause disharmony among the medical staff must be clearly and persuasively supported by the record. The record should also clearly and persuasively indicate that such prospective disharmony probably will have an adverse effect on patient care and not merely annoy or displease certain physicians and administrators." Sussman v. Overlook Hosp. Ass'n, 92 N.J. Super. 163, 182, 222 A.2d 530, 540 (1966).

[5]At present California, New Hampshire, New Jersey, Ohio and Vermont have held that the admissions decisions of private hospitals are subject to judicial review. Willis v. Santa Ana Community Hosp. Ass'n, 58 Cal.2d 806, 810, 376 P.2d 568, 570, 26 Cal. Rptr. 640, 642 (1962); Bricker v. Sceva Speare Memorial Hosp., 281 A.2d 589, 592-93 (N.H. 1971); Greisman v. Newcomb Hosp., 40 N.J. 389, 402-03, 192 A.2d 817, 824-25 (1963); Davidson v. Youngstown Hosp. Ass'n, 19 Ohio App. 2d 246, 251, 250 N.E.2d 892, 896 (1969); Woodard v. Porter Hosp., Inc., 125 Vt. 419, 423, 217 A.2d 37, 40 (1966).

able exclusion. As to what constitutes such an abuse it has been held that "the managing authorities of a private hospital are vested with broad discretionary powers in the selection of its medical and surgical staffs. If the exclusion of a person from its medical or surgical staff is based on the sound and reasonable exercise of discretionary judgment, courts will not intervene, but if the exclusion stems from unreasonable, arbitrary, capricious or discriminatory considerations, equitable relief is available". *Davidson v. Youngstown Hospital Association*, 19 Ohio App.2d. 246, 251, 250 N.E.2d 892, 896 (1969).

The basis for this departure from the traditional rule was first voiced in *Greisman v. Newcomb Hospital*, 40 N.J. 389, 402-04, 192 A.2d 817, 824-25 (1963).

[W]hile the managing officials [of a private hospital] may have discretionary powers in the selection of the medical staff, those powers are deeply imbedded in public aspects, and are rightly viewed, for policy reasons . . . as fiduciary powers to be exercised reasonably and for the public good.

. . . .

Hospital officials are properly vested with large measures of managing discretion and to the extent that they exert their efforts toward the elevation of hospital standards and higher medical care, they will receive broad judicial support. But they must never lose sight of the fact that the hospitals are operated not for private ends but for the benefit of the public, and that their existence is for the purpose of faithfully furnishing facilities to the members of the medical profession in aid of their service to the public. They must recognize that their powers, particularly those relating to the selection of staff members, are powers in trust which are always to be dealt with as such. While reasonable and constructive exercises of judgment should be honored, courts would indeed be remiss if they declined to intervene where, as here, the powers were invoked at the threshold to preclude an application for staff member-

ship, not because of any lack of individual merit, but for a reason unrelated to sound hospital standards and not in furtherance of the common good.

PUBLIC VERSUS PRIVATE HOSPITAL

At this point it is appropriate that we note the distinction that has been drawn in characterizing a hospital as a public or private institution. It has been recognized that the generally accepted view is that "a public hospital is an instrumentality of the state, founded and owned in the public interest, supported by public funds, and governed by those deriving their authority from the state. A private hospital is founded and maintained by private persons or a corporation, a state or municipality having no voice in the management or control of its property or the formation of rules for its government." *Woodard v. Porter Hospital, Inc.*, 125 Vt. 419, 422, 217 A.2d 37, 39 (1966). The principal distinguishing feature of a hospital that is characterized as being private is that it as an entity has the power to manage its own affairs and is not subject to the direct control of a governmental agency. *See Shulman v. Washington Hospital Center*, 222 F. Supp. 59, 61-62 (D.D.C. 1963); *Edson v. Griffin Hospital*, 21 Conn. Supp. 55, 144 A.2d 341, 344 (1958). Such a private identity is usually evidenced by the fact that under the hospital's charter or corporate powers granted, it has the right to elect its own board of officers and directors. It is this board in whom is placed, either expressly or impliedly, the discretionary power of granting staff privileges.

It is evident that recently some courts have recognized another hospital classification falling between that of public and private. Such a status can be termed "quasi public" as distinguished from a hospital that is truly private. *E.g.*, *Sussman v. Overlook Hospital Association*, 92 N.J. Super. 163, 168, 222 A.2d 530, 533 (1966), *aff'd*, 95 N.J. Super. 418, 231 A.2d 389 (1967). The "quasi public" status is achieved if what would otherwise be a truly private hospital was constructed with public funds,[6] is presently receiving

---

[6]Grants by the federal government are made to public and private hospitals

public benefits or has been sufficiently incorporated into a governmental plan for providing hospital facilities to the public.[7] It is not surprising that courts would be more readily willing to grant judicial review of a private hospital's administrative decision if it could be shown that the hospital in question was not a truly private institution. However, if the proposition that any hospital occupies a fiduciary trust relationship between itself, its staff and the public it seeks to serve is accepted, then the rationale for any distinction between public, "quasi public" and truly private breaks down and becomes meaningless, especially if the hospital's patients are considered to be of primary concern.

In holding that the actions of appellee hospital in this case are subject to judicial review we do not mean to characterize appellee as anything other than a private hospital. In relation to this point we are in concurrence with the reasoning that "a private nonprofit hospital, which receives part of its funds from public sources and through public solicitations, which receives tax benefits because of its nonprofit and nonprivate aspects and which constitutes a virtual monopoly in the area in which it functioned, is a 'private hospital' in the sense that it is nongovernmental, but that it is in no position to claim immunity from public supervision and control because of its private nature. The power of the staff of such a hospital to pass on staff membership applications is a fiduciary power which must be exercised reasonably

---

for construction costs pursuant to the Hill-Burton Act, 42 U.S.C. § 291 (1965). Castle Memorial Hosp., appellee in this case, was the recipient of $533,225 of such federal funds, in addition to state funds.

[7]Some courts that have not in the past recognized the existence of these criteria as affecting the issue of judicial review are not doing so. In Shulman v. Washington Hosp. Center, 222 F. Supp. 59 (D.D.C. 1963), quoted earlier in this opinion for the rationale of the majority position, the court stated, in holding that the staff membership decisions of a private hospital are not subject to judicial review, that "the circumstance that [the hospital] was constructed with the aid of Government funds, as is the case in this instance, does not detract from its status as a private hospital." *Id.* at 61. Subsequently Shulman, on the basis of recent developing law in this area, sued the hospital again. Although the court in Shulman v. Washington Hosp. Center, 319 F. Supp. 252, 254-55 (D.D.C. 1970), held that the prior decision was *res judicata* as to Shulman's due process claim, it did recognize the significance of governmental involvement.

and for the public good." *Davidson v. Youngstown Hospital Association*, 19 Ohio App. 2d 246, 250, 250 N.E.2d 892, 895 (1969).

In the case before us we need not reach the issue of whether the decision of the board of a truly private hospital not to grant staff privileges is subject to judicial review. As indicated previously, appellee hospital was the recipient of state and federal funding during its construction. Our opinion today, therefore, is limited to those situations where the hospitals involved have had more than nominal governmental involvement in the form of funding. We leave the issue as to what other forms of governmental-public involvement are sufficient to constitute a basis for judicial review and the issue as to whether a truly completely private hospital is subject to such review to future cases wherein those questions are more adequately briefed by the litigants involved.

PROCEDURAL DUE PROCESS—
REQUIREMENT OF A HEARING

Compliance with the principle that a doctor applying for

---

[T]he Washington Hospital Center is a "private" as distinct from a "public" institution, for the purposes of determining what sort of judicial review is applicable to its actions in managing its staff. *It is clear that this hospital does not have the close governmental ties, either financial or managerial, which would justify its being classified as public.* All of the cases cited by plaintiff to support its argument that defendants should be subject to constitutional standards of due process which require notice, hearing, stated reasons for dismissal, and the right of confrontation, involve hospitals which received substantial government aid for operation or construction, see Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964); Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D.Pa. 1970), and/or which were the only hospitals in the area, and thus acquired a quasi-public character, see Meredith v. Allen County War Memorial Hospital Commission, 397 F.2d 33 (6th Cir. 1968); Burkhart v. Community Medical Center, 432 S.W.2d 433 (Ky.Ct.App. 1968); Foster v. Mobile County Hospital Board, 398 F.2d 227 (5th Cir. 1968). The Court holds that defendant Washington Hospital Center, as a private institution, has the right to remove members of its staff, free from judicial review, so long as its own regulations are followed as was done in this case. (Emphasis added.)

Apparently if the Shulman court had found sufficiently close governmental ties, and the *res judicata* issue had not been controlling, it would have classified the hospital as public and granted judicial review.

staff privileges at a private hospital, as well as at a public hospital, be afforded procedural due process requires a balancing process of the varying interests involved. The doctor has an interest in being able to pursue his profession which requires that the necessary facilities be available to him. The hospital is interested in preserving its autonomy and in maintaining quality control in its medical staff. The public's interest lies in the perpetuation of that quality control and, in the sense that its services are and remain available to those in need, in the productivity of the hospital.[8]

The purposes and interests of everyone concerned would be defeated if hospitals were required to engage in excessively burdensome procedures in screening staff applicants. However, due process, in this context, requires that a fair and thorough consideration be made of a doctor's application for initial appointment or reappointment to the staff. Therefore, a hearing before the deciding board must be provided. It is not possible that such a hearing require all the aspects of a formal judicial or quasi judicial hearing. Although a

---

[8]Justice Abe concurring herein states that HRS § 453-8 (Supp. 1971) sets forth a "comprehensive scheme" to determine whether a physician continues to be competent. It should be pointed out that this statute does not provide for systematic periodic review of a doctor's skill and performance but merely provides for the revocation or suspension of a doctor's license. Inherent within the mechanics of HRS § 453 is the fact that it does not become operative until someone has accepted the burden of challenging a doctor's right to retain his license. Aside from other criteria that are not directly related to a doctor's competency as a physician, HRS § 453-8(12) provides that "professional misconduct or gross carelessness or manifest incapacity in the practice of medicine or surgery" are sufficient grounds for the state board of medical examiners to revoke or suspend a doctor's license. Under Justice Abe's view "no Hawaii hospital" could deny a licensed doctor privileges or refuse to renew his privileges regardless of whether the doctor was in fact too incompetent or incompatible to provide the quality of care the hospital board itself strives to maintain. The hospital board, in order to deny such a doctor privileges, would first have to wait until the doctor performed a particular act sufficient to constitute "gross carelessness" or the like in the eyes of the state board of medical examiners. Then the hospital board would have to initiate revocation of license proceedings and subsequently be successful in having the doctor's license revoked. The majority does not feel that it is either practically reasonable or legally sanctionable to impose such a burden on either what has been earlier characterized in this opinion as a truly private hospital or on a private hospital that has received government funds but has provided the applicant a valid hearing.

hospital board does not have the power to subpoena witnesses or administer oaths, certain procedural safeguards must be provided. The doctor should be on notice that a hearing is available to him. He should be given timely notification sufficiently prior to the hearing for him to adequately prepare a defense. In conjunction with such notice, a doctor whose privileges are being revoked or who is being denied reappointment should be provided a written statement of the charges against him. Such statement should be sufficiently adequate to apprise him of the specific charges against him. A doctor who is being denied initial appointment to a hospital staff should be provided a written statement specifying the reasons his application is being denied.

Because a hospital board has no subpoena power, there can be no right to confront and cross-examine persons who have made adverse statements of a doctor unless such persons testify at the hearing. However, a doctor should have the right to call his own witnesses.

It should be within the discretion of the hospital board as to whether counsel may attend the hearing and participate in the proceedings. Participation of counsel would probably not be necessary unless the hospital's attorney is used in the proceedings or the extreme nature of the charges involved indicated that representation by an attorney would be advantageous. Such a limitation would not preclude a doctor from consulting an attorney prior to the hearing even though the attorney was not allowed to participate in the hearing itself.

The basis for the decision of the board must come from substantial evidence which was produced at the hearing. As such the board cannot rely on *ex parte* communications that were not made known to the doctor in question. The utilization of such material would render ineffective the doctor's right to answer the charges upon which the denial of his staff privileges are based.

The decision of the board should be written, including the basis for the decision, thus providing a record for judicial review.

486

In the present case appellant was granted staff privileges apparently on a probationary basis for a period of one year. At the end of that period it was decided that such privileges not be renewed. It is our opinion that appellant was not afforded procedural due process. Although a hearing was provided appellant, it was patently defective.

Presumably among the significant factors to be considered by a hospital board at a reappointment or revocation of privileges hearing would be included the previous performance of the doctor at the hospital. A year's time, as in this case, would appear to be a sufficiently long period for specific charges to develop against appellant if his denial of privileges were to be justified. And yet in this case, prior to the termination of appellant's privileges, appellant was never provided with specific written charges as to why his performance was not deemed acceptable. He was merely read an indictment of general allegations at the hearing. In order for appellant's right to a hearing to be effective he must have been apprised of the particulars of the specific claims against him prior to the hearing. In this case appellant had no opportunity to investigate the basis for his performance being questioned. As such his right to present a defense was rendered nugatory.

It is clear from the record of this case that the hospital board made its decision as to the renewal of appellant's privileges prior to the ineffective hearing granted appellant. Such a procedure cannot be considered satisfactory. A final decision to revoke privileges or not reappoint, made by the ultimate governing body, the hospital board, must come after the requisite hearing is provided. In order for the board to function as an objective decision making body in its capacity as grantor of staff privileges it must not be tainted by its own premature decisions prior to the hearing.

We do not reach the issue whether in this case the decision of the board, aside from the fact that the hearing was not adequate, was based on insubstantial evidence, resulting in an arbitrary, capricious or unreasonable exclusion amount-

ing to an abuse of discretion. Appellant clearly was denied procedural due process. Although this case is appealed from the decision of the court in the jury trial below, equitable relief having been prayed for, it is appropriate to grant such a remedy. Therefore this case is remanded for the trial court to grant an injunction against appellee, reinstating appellant with his temporary staff privileges.

*Joseph A. Ryan (Ryan & Ryan* and *Edward Y. N. Kim* of counsel) for plaintiff-appellant.

*Dennis E. W. O'Connor (John A. Hoskins* with him on the brief; *Anthony, Hoddick, Reinwald* and *O'Connor* of counsel) for defendants-appellees Castle Memorial Hospital, et al.

*Edmund Burke (George Richard Morry* with him on the brief; *Conroy & Hamilton* of counsel) for defendant-appellee John J. Lowrey, M.D.

*Richard E. Stifel (Jenks, Kidwell, Goodsill* and *Anderson* of counsel) for defendants-appellees Robert A. Rose, J.I.F. Reppun, Don E. Poulson and Ralph B. Cloward.

*Richard Hirai (Walter G. Chuck* and *Henry I. Kuba* on the brief; *Chuck & Fujiyama* of counsel) for defendant-appellee Great American Insurance Company.

CONCURRING OPINION OF ABE, J.

I begin with the propositions that acts of hospitals performing "public functions"[1] or receiving government funds are state action and that such hospitals are therefore subject to the requirements of the Due Process Clause and may deny a physician the liberty to practice medicine only if they have a rational basis for doing so and act pursuant to fair procedures.

I would hold that whenever a physician is in compliance with the requirements for licensing of the State Board of Medical Examiners, no Hawaii hospital subject to the Due

---

[1]Marsh v. Alabama, 326 U.S. 501 (1946); Amalgamated Food Employees Union v. Logan Valley Plaza, Inc., 391 U.S. 308 (1968); Smith v. Allwright, 321 U.S. 649 (1944).

Process Clause may completely deny him the right to admit and treat patients.

In my opinion, there is little need to allow hospitals to set up committees empowered to deny staff privileges to licensed physicians. The licensing of physicians has been preempted by the State and adequate procedures are already established by statute to determine whether or not a physician continues to be competent. As I read our statutes, any hospital, doctor, or other interested person may institute proceedings under HRS § 453-8 (Supp. 1971) to have a physician's license revoked or partially revoked. The Board of Medical Examiners, a select committee of physicians appointed by the Governor, then determines whether a physician's license should be revoked or suspended. Chapter 453 contains the detailed procedural protections which the majority favors, such as notice, opportunity for a hearing, and a subpoena power for both the board and the physician, and it allocates the burden of proof to the hospital, as Justice Levinson desires. The fact that the legislature has established a comprehensive scheme to determine whether or not a physician continues to be competent indicates that there is little need to allow hospitals to make a second determination of whether or not a physician is competent.

Against the positive need for hospital supervision of the competence of physicians, I weigh the risks of giving such supervisory powers to hospitals. Whenever a hospital appoints a group of its doctors to a "credentials committee" and empowers them to supervise the competence of other doctors, there is a grave danger that the members of the committee will seek to exclude doctors because they are competitors, because they are Black, or Jewish, or Haole or Oriental, because they have testified against them in malpractice suits, or simply because they do not like them. Requiring a credentials committee to act out a charade of seemingly fair procedures does little to minimize the danger that the committee will draw its conclusion for reasons not present in the record and that danger exists regardless of where the burden of proof is allocated. The root problem

is that a credentials committee can never be expected to act with the disinterestedness of the Board of Medical Examiners.

Weighing the very marginal gains to be had by allowing hospitals to completely exclude licensed physicians against the risks attending the power, I conclude that hospitals that are subject to the Due Process Clause have no rational basis for excluding licensed physicians.

This resolution does not create a risk that a hospital will be liable for the negligence of its physicians, yet lack the capacity to exclude them. With the possible exception of one decision,[2] courts have always held that a hospital is not liable for the negligent acts of the physicians who are not employed by the hospital.[3] The ordinary physician is not the hospital's "servant" because the hospital has no "right to control" the acts of an "independent contractor." Since the hospital is not liable for the independent physician's negligence, it has no need to guarantee that he is competent.[4]

The danger that the hospital's admission of a physician to its staff will encourage patients to seek the services of a doctor who may be incompetent is also chimerical. Patients

---

[2]Darling v. Charleston Community Memorial Hospital, 50 Ill. App. 2d 253, 200 N.E.2d 149 (1964), aff'd, 33 Ill. 2d 326, 211 N.E.2d 253 (1965).

[3]Moon v. Mercy Hospital, 150 Colo. 430, 373 P.2d 944 (1962); Cornelius v. Sinai Hospital of Baltimore, Inc., 219 Md. 116, 148 A.2d 567 (1959); Minogue v. Rutland Hospital, Inc., 119 Vt. 336, 125 A.2d 796 (1956); Keene v. Methodist Hospital, 324 F. Supp. 233 (D.C. Ind. 1971); Bulloch County Hospital Authority v. Fowler, 124 Ga. App. 242, 183 S.E.2d 586 (1971).

[4]Hospitals are, of course, liable for their own negligent acts, South Highlands Infirmary v. Camp, 180 So. 2d 904 (Ala. 1965); Schuster v. St. Vincent Hospital, 45 Wis. 2d 135, 172 N.W.2d 421 (1969); Weeks v. Latter-Day Saints Hospital, 418 F.2d 1035 (C.A. Utah, 1969), or for the negligence of interns, residents, emergency room physicians, and the like who are actually employed by the hospital. New Biloxi Hospital, Inc. v. Frazier, 245 Miss. 185, 146 So. 2d 882 (1962); Bing v. Thunig, 163 N.Y.S.2d 3, 2 N.Y.2d 656, 143 N.E.2d 3 (1957). Since salaried physicians are subject to the hospital's control, the doctrine of respondeat superior applies and the hospital has both a right and a duty to examine the competence of employees it hires on a salaried basis. A number of jurisdictions hold that a hospital is not liable for the acts of even a salaried physician, on the theory that, since medicine is a field of great expertise, hospitals have no "right to control" any doctor, salaried or not. See e.g., Brown v. Moore, 143 F. Supp. 816 (W.D. Pa. 1956).

are admitted to hospitals only *after* they have chosen a doctor. Even in emergency rooms, patients are treated either by doctors in the employ of the hospital, or by a physician of their own choosing.

Nor do I see a danger that a single hospital will be flooded with excessive numbers of doctors and patients. It seems preferable to allocate facilities to those patients who are neediest or on a first-come, first-serve basis, rather than to allow arbitrary admission of patients of self-selected physicians.

This court should recognize that hospitals are not clubs. Incumbent doctors do not need the power to exclude newcomers. Licensed physicians ought to be able to freely admit patients to any hospital of the patient's choosing. Also, we should recognize the right of a patient to have a doctor of his own choice attend him and we should eliminate factors that may hamper or hinder such right.

I concur in the holding that it was error for the court to grant a directed verdict allowing the hospital to completely exclude Dr. Silver, and error to fail to grant an injunction restraining Castle Memorial Hospital and the members of its credentials committee from completely denying Dr. Silver the right to admit patients.

### CONCURRING OPINION OF LEVINSON, J.

I join in the holding of the court that the decision of the governing body of Castle Memorial Hospital to revoke the appellant's staff privileges is subject to judicial review and that an injunction should issue reinstating him to the position which he occupied prior to the revocation proceeding. I also subscribe to the guidelines laid down in the opinion of the court restricting the administrative discretion of the hospital board and extending procedural protections to a physician whose staff privileges are at issue. I would, however, go further.[1]

I would hold in plain language that a physician licensed

---

[1] I understand my Brother Abe's position to be that all licensed physicians must be accorded staff privileges to practice in any public or quasi-public hospital, without regard to additional indicia of medical qualifications or performance. De-

by the State of Hawaii under HRS ch. 453 is presumed qualified to engage in the general practice of medicine. When a physician is in a specialty certified by the American Board of Medical Specialties, I would extend the presumption to that particular specialty. Thus, a hospital which has received public funds[2] would be required to grant the application for staff privileges of any board certified and/or licensed physician, unless it can adduce clear and convincing evidence that the physician lacks the requisite medical qualifications. I emphasize that the burden should be upon the hospital to adduce such evidence. I interpret the opinion of the court to be consistent with what I have said in this paragraph.

The hearing at which a physician's right to staff privileges is determined must comport with the dictates of due process. The physician may not be held to a more stringent standard of performance than are other staff members. In addition to timely notice and a written statement of the specific charges against him, I would hold that a physician is entitled to the representation of counsel and an opportunity to cross-examine all witnesses against him in all proceedings affecting his right to staff privileges. The conduct of an adequate defense is obviously impossible if the physician cannot confront and cross-examine adverse witnesses. A hospital's lack of subpoena power would not prevent the trier of fact from declining to consider evidence offered by a staff member who does not have the courage and willingness to subject himself to cross-examination.

I am satisfied from reading the entire record that Castle Memorial Hospital subjected Dr. Silver to a kafkaesque "kangaroo court," called at the eleventh hour in an effort to comply with the hospital's own by-laws and to rationalize a result which its board of trustees had already reached. Such proceedings are constitutionally intolerable.

---

spite the appeal inherent in all absolutist positions, I believe that the respective interests of hospital, physician, and public are susceptible to more flexible reconciliation.

[2] I express no opinion as to the standard which should be applied to those hospitals which receive no public funds.