383 F.Supp. 287 (1974)
Fred W. KLINGE, M. D., Plaintiff,
v.
LUTHERAN CHARITIES ASSOCIATION OF ST. LOUIS, a corporation, d/b/a Lutheran Medical Center, et al., Defendants.
No. 74-33 C (3).
United States District Court, E. D. Missouri, E. D.
October 23, 1974.
James J. Raymond, Clayton, Mo., for plaintiff.
Anderson, Gilbert, Wolfort, Allen & Bierman, and Karl E. Holderle, Jr., St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
WANGELIN, District Judge.
Plaintiff, a general surgeon on the staff of the defendant Hospital, filed this action on January 16, 1974 against the defendant Hospital and the three persons also named as defendants, who are surgeons on the staff of the defendant Hospital.
In Count I of plaintiff's complaint it is alleged that a Special Medical Records Review Committee, consisting of five other private physicians who are members of the medical staff and two of the defendants herein, Doctors Behrens and Klippel, were appointed to study and review the surgical records of plaintiff; such Committee reported and recommended corrective action be instituted against the plaintiff; that as of May 1, 1973 the Executive Committee and Joint Conference Committee of Lutheran Hospital medical staff recommended, under date of April 30, 1973, that any and every surgical procedure to be done (by Dr. Klinge) be done only with the consultation and approval of the Chief of Surgery or his designate and should be contingent until a formal plan had been presented and adopted by the Executive Committee and the Hospital Board of Lutheran Medical Center; that plaintiff agreed to an interim arrangement on May 2, 1973, similar to the proposal of April 30, 1973; that defendant Hospital unilaterally imposed the limitation and curtailment of plaintiff's clinical and surgical procedures and treatments at Lutheran Hospital as evidenced by certain correspondence set forth in plaintiff's *288 complaint; that plaintiff protested this curtailment; that under date of December 31, 1973, plaintiff was reappointed to the medical staff with full surgical privileges except that they were limited to the conditions set out on April 30, 1973; that on January 7, 1974, one Doctor Lund, President of the Lutheran Hospital medical staff, transmitted a summary of findings of the Special Medical Records Review Committee; that on January 11, 1974, plaintiff was advised that neither the Chief of Surgery nor any designate would engage in any consultations with plaintiff and that such declination precluded that performance of the consultation and approval restriction imposed on plaintiff on April 30, 1973, and that all privileges of the plaintiff were terminated effective January 14, 1974.
Plaintiff's complaint alleges that these actions unilaterally and unreasonably deprived him of his rights for a number of reasons as set forth in the complaint. Whereupon, plaintiff prayed for a restraining order and a permanent injunction to restore all of plaintiff's privileges as a member of the medical staff of defendant Hospital, and prayed for damages against all defendants.
Count II of plaintiff's complaint adopts the paragraphs of Count I and alleges that by the By-Laws, Rules and Regulations of the Hospital, defendant Hospital had agreed that no final action would be taken against him as a member of the medical staff in the form of restrictions and limitations without a "formal hearing" before an appropriate committee of said staff and that the restrictions had been imposed without a "formal hearing" and that such conduct was willful, malicious and arbitrary, unilateral and unreasonable, and prayed for punitive damages against the defendants, individually.
Upon the filing of this action on January 16, 1974, plaintiff brought this matter to the attention of this Court, seeking a temporary restraining order. The Court, after hearing said matter in Chambers with counsel for plaintiff and counsel for defendant Hospital, ordered, after inquiry, with respect to the competency of plaintiff: "That a hearing should be given plaintiff before the Board of Doctors, that they should make their respective findings." At the same time the temporary restraining order was denied. This Court further instructed the parties to proceed with all determinate speed to hold the hearing concerning the various charges made against the plaintiff.
The defendants' answer admitted that certain actions had been taken against the plaintiff by the respective committees of which plaintiff complained. Defendants then alleged that plaintiff had filed a lawsuit against them in the Circuit Court of the City of St. Louis praying for an injunction against the use of medical records at the meetings scheduled to set forth a procedure for inquiring into the competency and the surgical judgment of plaintiff, in which cause of action a temporary restraining order was, after having been issued, dissolved and an injunction refused, which cause of action is now on appeal in the Missouri Court of Appeals, St. Louis District.
Defendants then further alleged that a committee had been appointed and a date set for hearing, and that it was only after a ruling of this Court that it was able to arrange such a hearing; that it was advised that in the considered opinion of physicians and surgeons that plaintiff had failed to exercise reasonable judgment and skill in surgical procedures in the Hospital and that such failures were contrary to the best interests of the patients and that for more than a year the defendants had endeavored to remedy this situation and to give the plaintiff an opportunity to secure an assistant who could reasonably be relied upon, and that it was bound to take remedial measures to safeguard the patients at defendant Hospital. It was denied in the answers that the co-defendants, or any of them, conspired to do anything against the plaintiff.
*289 The defendants then filed motions for summary judgment. Summary judgment was taken up on September 20, 1974. In support of the motions for summary judgment, the defendants presented affidavits and memoranda. In opposition to the motion for summary judgment, plaintiff submitted memoranda. After extensive oral argument on the motion, the Court on September 20, 1974, indicated its intention to sustain the motions of the defendants herein for summary judgment.
The Court being fully apprised of the premises hereby makes the following findings of fact and conclusions of law.

Findings of Fact
The Court finds from the memoranda, and voluminous transcripts in evidence, filed in this matter that there is no genuine issue as to any material facts with respect to the defendants herein and that all defendants are entitled to judgment as a matter of law under Rule 56 of the Federal Rules of Civil Procedure.
While the granting of summary judgment is a harsh remedy which requires the exercise of great care, it must be kept in mind that the purpose of Rule 56 is to avoid the expenditure of judicial time and to avoid trials when the facts are not in dispute insofar as they are material in the determination of the lawsuit. Plaintiff's claim is based upon the allegation that the hearings conducted by the defendants were not in keeping with the constitutional safeguards which are collectively known as "due process". The volume and content of the evidence produced in this cause of action leave no doubt whatsoever in this Court's mind that "due process" was indeed afforded to the plaintiff in any actions that defendants took against him.
The record in this case shows that in February, 1972, the Executive Committee of the defendant Hospital's medical staff appointed a Special Medical Records Review Committee to study and review surgical records of plaintiff. On January 23, 1973, the Committee, consisting of six physicians, reported that it had reviewed the surgical records of the last five years of plaintiff's patients, and had set out in detail four alleged types of deficiencies with respect to the purported judgment and operative skill of plaintiff, each one of which was of a very serious nature.
An effort was made to have a hearing regarding the question of care exercised by plaintiff and the skill and judgment possessed by plaintiff. A memorandum was prepared by counsel for the medical staff enumerating in detail the requirements of "due process" that must be afforded plaintiff concerned. This memorandum concerned itself with, among other things, necessity of following the By-Laws, providing a statement of the charges, advising the plaintiff of the time and place of the hearing, the fact that the hearing should be before a properly authorized body and that the physician had the right to appear in person and present witnesses and documents and that the findings should be based upon the evidence submitted; that the physician had a right to rebut with favorable evidence, and that he usually should be confronted by the witnesses who are adverse to him and the right to cross-examine them; that if there is an exclusion of legal counsel, the decision must be the same for all parties; that the physician should be permitted to have a chosen representative from the medical staff assist him; that a record should be kept of the proceedings by a court reporter, an electronic transcription or a trained secretary; that an independent body should conduct a hearing and report to the executive body to the end that there would not be conflicts of interest, and that a hearing officer might be used who could give legal and administrative advice, and that there should be an appeal available to the governing board of the Hospital.
Counsel for plaintiff wrote a letter demanding a hearing. An effort was made to provide such a hearing for the plaintiff, but was stopped by the temporary issuance of a restraining order by the Circuit Court of St. Louis, that *290 Court thereafter, on being advised of the facts, dissolving the restraining order.
Another attempt was made to have a hearing in the matter and this suit was filed in this Court. Upon this Court's making its order that a hearing should be had before a board of physicians such hearing was set to commence on January 28, 1974.
Prior to that hearing a document was sent to and received by plaintiff setting forth in writing 15 specific charges which be the subject of the inquiry at the hearing. A list of cases by numbers and various conclusions concerning the cases were delivered to the plaintiff. Plaintiff ordered some 95 records reproduced for his use, all of which were in fact reproduced for his use.
Plaintiff appeared at the meeting set on January 28, 1974, before the panel appointed to hear the matter, all of whom were members of the staff of the Hospital. Plaintiff objected to the calling of the hearing. A lawyer of considerable experience was engaged as a hearing officer, to act primarily as a parliamentarian and an experienced short-hand reporter was engaged to record the matter. A proper notice was given to plaintiff of the hearing, which the plaintiff acknowledged having received. It was determined that the hearing was in accordance with the By-Laws, Rules and Regulations of the medical staff. Plaintiff was advised that he would have the opportunity to cross-examine witnesses, to present witnesses in his own behalf and to challenge the admissibility of any evidence presented against him, and would be granted an opportunity to present any documentary evidence that he wished on his own behalf and witnesses on his own behalf and might make statements for the record at the conclusion of the evidence during the presentation of his own case and that he would have an opportunity to introduce rebuttal evidence subsequent to the initial hearing.
The statement of the Special Medical Records Review Committee's findings was read and letters that passed between plaintiff and the representative of the Hospital and members of the staff were read, as were letters between counsel for the medical staff and counsel for the plaintiff, as well as the charges that were delivered to the plaintiff. A notice dated the 18th day of January, 1974, two days after the order of this Court directing that a hearing be had advising Dr. Klinge of the scheduling of the hearing for January 28, 1974 was presented. After the proceedings continued, which were transcribed, Dr. Klinge withdrew from the meeting.
The hearing was had in a series of six meetings, commencing on January 28, 1974, and ending on February 11, 1974. A transcript of the hearings comprised over 500 pages. The documentary evidence consisting of hospital records concerned with plaintiff's services, from which the names of patients had been deleted, are comprised of many hundreds of pages. Members of the medical staff of defendant Hospital testified, and several surgeons of outstanding ability spent many hours going over the records concerned with plaintiff's patients and the Special Hearing Committee found that ten of the charges were sustained, the last two of which were that plaintiff failed to exercise that degree of skill and care that a reasonably careful and skilled surgeon would have exercised under the same or similar circumstances and that he failed to possess that degree of skill and judgment ordinarily possessed by reasonably skilled surgeons. These findings were delivered to the President of the medical staff of the defendant Hospital. The evidence was overwhelming that plaintiff simply should not practice as a surgeon. The findings of the Special Hearing Committee were delivered to the plaintiff and plaintiff was advised that the Board of Directors of defendant Hospital adopted a resolution dismissing him from the medical staff with provision made to *291 care for plaintiff's patients presently in the institution and plaintiff was advised of his right to a hearing before the Board of Directors. The Board of Directors advised plaintiff that a hearing would be had before the Board of Directors on April 17, 1974. Such a hearing was had. Plaintiff did not appear. The matter was presented to the Board in detail. The medical records librarian testified that she was instructed to make available the medical records for plaintiff to review on January 23rd and 24th, 1974, or make available for plaintiff, his attorney or a physician to review; that she did make available approximately 95 medical records; that plaintiff had asked that copies be made and that she have the 95 records photostated which plaintiff then took into his custody.
The transcript of the presentation of the matter to the Board of Directors consumed some 64 pages and an equal number of pages of exhibits were presented to the Board of Directors.
The evidence shows that plaintiff was provided with the charges in writing, and afforded every reasonable opportunity to be heard; that his demand to be given a hearing was met, and that an order of this Court that a hearing take place was carried out; and that such proceedings afforded plaintiff "due process."
The Board of Directors affirmed their ruling dismissing plaintiff from the medical staff. It is the opinion of this Court that this decision was sustained by competent and substantial evidence. This evidence was developed from the testimony of expert witnesses with whose qualifications this Court is quite satisfied with.
This Court cannot lawfully under the circumstances substitute any judgment which it may have for that of the experts and bring about a different result unless it finds that there is no substantial evidence having probative force to sustain the judgment of the Special Committee. The judgment of physicians regarding surgical skill or the applying thereof is required. Haase v. Garfinkel, 418 S.W.2d 108, 113 (Mo., 1967).
Concerning the question of the Court's substituting its opinion for that of the physicians the United States District Court for the Eastern District of Pennsylvania in the case of Citta v. Delaware Valley Hospital stated:
While the questions are not at all free from doubt, as is indicated by the large vote in plaintiff's favor, we are not free to substitute our judgment for that of the physicians and surgeons comprising the Corporate Staff of the Hospital. And because acceptance of the defendants' evidence provides sufficient evidence on which to base the decision to restrict plaintiff's privileges, the decision must be allowed to stand. See Koelling v. Board of Trustees, 259 Iowa 1185, 146 N.W. 2d 284, 296-297 (Iowa, 1967), 313 F. Supp. 301 (1970).
In the case of Duffield v. Memorial Hospital Association, 361 F.Supp. 398, 404 (S.D., W.Va., 1973), the Court stated:
No court should substitute its evaluation of such matters for that of the Hospital Board. It is the Board, not the court, which is charged with the responsibility of providing a competent staff of doctors. The Board has chosen to rely on the advice of its Medical Staff, and the court cannot surrogate for the Staff in executing this responsibility. Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in the competence and moral commitment of its staff. The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered *292 with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere. Courts must not attempt to take on the escutcheon of Caduceus. (361 F.Supp. at 404).
The hospital staff attempted to provide a hearing in the matter. Plaintiff filed a lawsuit in the state court and thus prevented a hearing temporarily. He demanded a hearing. This Court ordered a hearing, and such a hearing was had. Plaintiff was provided with a written statement of the charges against him on December 31, 1973, and he was provided with a compilation of records and thereafter, at his request, with 95 photostatic copies of records. He attended the hearing and chose not to remain. The record shows that he was entreated to return and to attend the hearings, but he refused to do so.
In the case of Silver v. Castle Memorial Hospital, 53 Haw. 475, 497 P.2d 564, the Supreme Court of Hawaii stated:
The doctor should be on notice that a hearing is available to him. He should be given timely notification sufficiently prior to the hearing for him to adequately prepare a defense. In conjunction with such notice, a doctor whose privileges are being revoked or who is being denied reappointment should be provided a written statement of the charges against him. Such statement should be sufficiently adequate to apprise him of the specific charges against him. A doctor who is being denied initial appointment to a hospital staff should be provided a written statement specifying the reasons his application is being denied. (497 P.2d at 571).
The Supreme Court of Hawaii stated further in the Silver case:
It should be within the discretion of the hospital board as to whether counsel may attend the hearing and participate in the proceedings. Participation of counsel would probably not be necessary unless the hospital's attorney is used in the proceedings or the extreme nature of the charges involved indicated that representation by an attorney would be advantageous. Such a limitation would not preclude a doctor from consulting an attorney prior to the hearing even though the attorney was not allowed to participate in the hearing itself. (497 P.2d at 571).
The defendants' motions for summary judgment were based upon the voluminous transcripts, letters, exhibits and documents. In view of the fact that this Court must depend upon the opinion of experts in highly specialized matters such as these and since the documents filed in support of the motions for summary judgment show that the various phases required were to assure that plaintiff was given "due process" and that since this Court has found that the evidence was substantial and supported the findings of the Special Medical Hearing Committee and of the Board of Directors of the defendant Hospital, the filing of motions for summary judgment is a proper procedure.
Plaintiff, in his complaint, alleges that the three individual defendants conspired against him. The removal of plaintiff from the staff under the evidence adduced is necessary and proper, and the judgment of the Board of Doctors and the Board is a correct one. Irrespective of allegations of alleged conspiracy on the part of the individual defendants, plaintiff could have suffered no injury or no damage since his removal from the Board was necessary under the circumstances.
Concerning the propriety of the Court's ruling on motions for summary judgment in a matter such as this, the Fifth Circuit Court of Appeals has stated:
The defendants had a duty to provide the patients of Barbour County Hospital with competent professional medical services. The practice of major surgery is a highly specialized field and is recognized as a delicate art. The citizens of Barbour County are entitled to have the defendants, *293 who have been charged with that responsibility, make the sensitive and critical judgments as to the medical competence of the hospital staff. Once having determined that the judgment was supported by substantial evidence and was made using proper criteria, after a satisfactory hearing, on a rational basis, and without irrelevant, discriminatory and arbitrary influences, the work of the court came to an end. There was nothing further to try and the entry of summary judgment was entirely proper. Woodbury v. McKinnon, 447 F.2d 839, 846 (5th Cir., 1971).
In the case at bar the complexity of the matter concerns the fact that it involves the actions of a trained surgeon operating in a highly specialized field. These matters were heard by a group trained in the same field, and they made their findings. Thus, the complexity of the matter is out of the case. It would serve no useful purpose for the Court to hear the very considerable amount of evidence over again, and no good reason appears why it should. Plaintiff appeared initially at the first hearing and refused to appear further. Plaintiff is an educated individual and the hearing was before a group of people in the same general profession as plaintiff. It appears that the hearing was a proper and fair one and that every reasonable opportunity was given plaintiff to present his side of the matter and that he was afforded proper and fair treatment under the circumstances, and that the findings of the committee that he failed to possess that degree of skill ordinarily possessed by reasonably competent physicians and that he failed to exercise it, was the correct one based on the evidence adduced.
In consequence,
It is hereby ordered that the motions for summary judgment be and are granted; and
It is further ordered that judgment for the defendants shall be entered; and
It is further ordered that plaintiff shall pay costs in this action; and
It is further ordered that the time for appeal shall run from this date.