**REBECCA ESTES, TIMOTHY McCOWN, LEILA LEE,** and **KEITH LANCETTE,** Plaintiffs–Appellants, v. **KAPIOLANI WOMEN'S AND CHILDREN'S MEDICAL CENTER,** a Hawaii Non–Profit corporation, **RICHARD DAVI,** and **HONOLULU POLICE DEPARTMENT,** Defendants–Appellees

NO. 13079

(CIV. NO. 86–4508)

FEBRUARY 20, 1990

LUM, C.J., PADGETT, HAYASHI, AND
WAKATSUKI, JJ., AND RETIRED JUSTICE
NAKAMURA, ASSIGNED BY REASON
OF VACANCY

OPINION OF THE COURT BY WAKATSUKI, J.

Appellants, on two occasions, attempted to distribute leaflets and otherwise express anti–abortion views on the interior walkway adjacent to one of the main entrances to Kapiolani Hospital (Hospital). Appellants did not physically block or disrupt the ingress or egress of persons entering or leaving the Hospital. In any event, because Appellants had not obtained permission from the Hospital to be there, security guards asked them to leave. This request was met with refusal, and therefore, the Hospital sought police help in removing Appellants who were deemed trespassers. After being

warned by the police that they would be arrested for trespass, Appellants left the premises.

The Appellants, however, were still convinced that they had a constitutional right to conduct their activities at the Hospital entryway under Article 1, Section 4 of the Hawaii constitution, and therefore filed an action to enjoin the Hospital from enforcing a policy of prohibiting solicitation on its hospital grounds. Appellants had earlier filed an action in federal district court raising the same issue, but that action was dismissed as no "state action" was involved which would bring the claim within the purview of the federal constitution.

Our court below dismissed Appellants' injunctive action. We affirm.

A.

Appellants argue that although Kapiolani Hospital is a private corporation, the Hospital is imbued with a quasi–public character, and therefore, should be deemed a public agency for free speech purposes. In support of this argument, Appellants cite evidence that the Hospital receives large amounts of public funds to carry out various activities and functions; that the Hospital is heavily regulated by the State; that to an extent it enjoys a virtual monopoly status in the community for the provision of some services; and that the University of Hawaii, a state institution, leases several floors of the Hospital building to house one department of the medical school.

Article I, § 4 of the Hawaii constitution provides in pertinent part:

No law shall be enacted . . . abridging the freedom of speech[.]

Although this provision is not so narrowly read as to preclude only legislative enactments which abridge free speech, still, "[i]t is, of course, a commonplace that the constitutional guarantee of free

speech is a guarantee only against abridgement by government." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976). This constitutional provision "erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948). The question of abridgement by government is generally addressed as whether "state action" is involved. "While the principle that private action is immune from the restrictions of [Article I, § 4 of the Hawaii constitution] is well established and easily stated, the question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other frequently admits of no easy answer." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349–50 (1974).

A state "can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must be deemed that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982). "[W]hen the state directs, supports, and encourages those private parties to take specific action, that is State action." *Blum v. Yaretsky*, 457 U.S. at 1028 (Brennan, J., dissenting). In other words, there must be a sufficiently close nexus between the State and the challenged action so that the action of the private entity may be fairly treated as that of the State itself. *Blum v. Yaretsky*, 457 U.S. at 1004; *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 350–51.

Appellants have not met the burden of showing by clear and convincing evidence that the State in any way directed, encouraged, or supported the Hospital's no–solicitation policy. *See, e.g., Rendell–Baker v. Kohn*, 457 U.S. 830 (1982) (fact that a private school received more than 90% of its funding from the state did not convert school decisions into state action); *Jackson v. Metropolitan Edison Co., supra,* (actions of a heavily regulated utility with governmentally protected monopoly status not treated as actions of state); *State v. Marley*, 54 Haw. 450, 462, 509 P.2d 1095, 1104

(1973) ("But it has never been held that the carrying on of even massive amounts of business activity with the government converts a private corporation into something called a 'quasi–public' corporation."). Neither have Appellants shown a clear and sufficient nexus between the Hospital's no–solicitation policy and its funding, regulation, or business relationship between the Hospital and the State.

We, therefore, hold that the Hospital is not a state agency, nor is a state or county statute, ordinance or regulation involved. The Hospital's no–solicitation policy is not a response to any government law or directive. Further, the police involvement in enforcing the Hospital's right against trespass does not convert this into a state action. *Hernandez v. Schwegmann Bros. Giant Supermkts., Inc.*, 673 F.2d 771 (5th Cir. 1982); *Tauvar v. Bar Harbor Congregation*, 633 F. Supp. 741 (D.Me. 1985).

### B.

Appellants further argue that notwithstanding the cases decided by the United States Supreme Court, this court's decision in *Silver v. Castle Memorial Hospital*, 53 Haw. 475, 497 P.2d 564 (1972), supports the proposition that Kapiolani Hospital is a quasi–public institution. We disagree.

In *Silver*, this court held that although the hospital was a private hospital, the denial of staff privileges to a physician was subject to judicial review. In so holding, this court emphasized that the hospital's "powers in the selection of the medical staff . . . are deeply imbedded in public aspects, and are rightly viewed, for policy reasons . . . as fiduciary powers to be exercised reasonably and for the public good." *Id.* at 480, 497 P.2d at 568 (quoting *Greisman v. Newcomb Hosp.*, 40 N.J. 389, 402–04, 192 A.2d 817, 824–25 (1963)). This court also noted that a hospital's "existence is for the purpose of faithfully furnishing facilities to the members of the medical profession in aid of their service to the public." *Id.*

Contrary to Appellants' argument, this court stated in *Silver*:

*In holding that the actions of appellee hospital in this case are subject to judicial review we do not mean to characterize appellee as anything other than a private hospital.* In relation to this point we are in concurrence with the reasoning that "a private nonprofit hospital which receives part of its funds from public sources and through public solicitations, which receives tax benefits because of its nonprofit and nonprivate aspects and which constitutes a virtual monopoly in the area in which it functioned, it is a 'private hospital' in the sense that it is nongovernmental, but that it is in no position to claim immunity from public supervision and control because of its private nature. The power of the staff of such a hospital to pass on staff membership applications is a fiduciary power which must be exercised reasonably and for the public good." *Davidson v. Youngstown Hospital Association*, 19 Ohio App. 2d 246, 250 N.E.2d 892, 895 (1969). [Emphasis added.]

*Id.* at 482, 497 P.2d at 570.

Obviously, *Silver* is inapplicable to this case.

## C.

There are circumstances, however, in which private property rights must give way to free speech rights of citizens. In *Marsh v. Alabama*, 326 U.S. 501 (1946), the United States Supreme Court held that under some circumstances, privately owned property can be treated, for First Amendment purposes, as though it were publicly held. Since *Marsh*, the United States Supreme Court has often grappled with the problem of delineating the boundaries of

this rule. *See, e.g., Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.,* 391 U.S. 308 (1968); *Lloyd Corp. v. Tanner,* 407 U.S. 551 (1972); *Hudgens v. NLRB,* 424 U.S. 507 (1976). There is no dispute, however, that the right of access onto private property is premised on the fact that these places, such as sidewalks, streets, parks, and retail business districts, "are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.,* 391 U.S. at 315. "The underlying concern . . . [is] that traditional public channels of communication remain free, regardless of the incidence of ownership." *Hudgens v. NLRB,* 424 U.S. at 539 (Marshall, J., dissenting).

Unlike sidewalks (*Marsh v. Alabama*) or areas fronting retail stores *(Logan Valley, Hudgens),* we hold that the interior walkway to the main entrance to the Hospital is not historically nor traditionally associated with the exercise of free speech rights.

D.

Appellants urge this court to adopt the holding of the California Supreme Court in *Robins v. Pruneyard Shopping Center,* 23 Cal. 3d 899, 153 Cal. Rptr. 854, 592 P.2d 341 (1979). In *Pruneyard,* the court held that a privately owned shopping center was not free to forbid expressive activity unrelated to any commercial purpose. Conceding that the outcome would be different under the federal constitution, the California Supreme Court concluded that the California constitution protected the conduct of the plaintiffs who, without permission, had set a table in the shopping center to gather signatures on a petition. The court, in its decision, noted that the language of the California constitution was

markedly different from the language of the First Amendment of the U.S. Constitution.[1] Besides, California courts have historically accorded free speech protections greater than those accorded by the First Amendment.

Contrary to the framers of the California constitution, the framers of our Hawaii constitution adopted language nearly identical to that of the First Amendment for the protection of free speech. In construing Article 1, Section 4 of our Hawaii constitution we adopt the holdings of the federal cases construing the First Amendment rights to free speech of our U.S. constitution which would prohibit Appellants from distributing leaflets and otherwise express anti–abortion views on the premises of the Hospital.

Affirmed.

*Edward J. Bybee* (*C. Peter Thomas S. Cornell*, with him on the brief of Rother, Bybee, Chang & Rulon) for Plaintiffs–Appellants.

*Dennis E. W. O'Connor* (*Jerrold K. Guben* with him on the brief of Reinwald, O'Connor, Marrack, Hoskins & Playdon) for Defendants–Appellees Kapiolani Women's and Children's Medical Center and Richard Davi.

*Bernadette Franks–Ongoy*, Deputy Corporation Counsel, for Defendant–Appellee City and County of Honolulu.

---

[1] Art. I, § 2 of the California constitution reads:

> Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.

In contrast, the First Amendment states:

> Congress shall make no law . . . abridging the freedom of speech[.]